This Opinion is a
Precedent of the TTAB
Mailed: September 8, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board

————

*In re Morinaga Nyugyo Kabushiki Kaisha*

————

Serial No. 86338392
filed July 16, 2014

————

Keith A. Barritt, Fish & Richardson, P.C., for Applicant.

April A. Hesik, Trademark Examining Attorney, Law Office 113, Odette Bonnet, Managing Attorney.

————

**Before Kuhlke, Mermelstein, and Bergsman, Administrative Trademark Judges.**

**Opinion by Mermelstein, Administrative Trademark Judge:**

Morinaga Nyugyo Kabushiki Kaisha applied to register[1] on the Principal Register

the mark **MT. RAINIER THE MOUNTAIN OF SEATTLE ESPRESSO & MILK**

and design, as set out below for use on

> Milk beverages containing espresso coffee and milk; milk products containing espresso coffee and milk, excluding ice cream, ice milk and frozen yogurt, in International Class 29, and
>
> Espresso coffee containing milk; and sandwiches flavored with espresso coffee and milk, in International Class 30.

---

[1] The application was filed based on the allegation of a *bona fide* intent to use the mark in commerce, Trademark Act § 1(b), and upon Trademark Act § 44(e), claiming ownership of a Japanese registration. Applicant disclaimed **ESPRESSO & MILK** apart from the mark as shown. "The color(s) green, white, azure, and black [ ]are claimed as a feature of the mark."



Applicant appeals from the Examining Attorney's final refusal to register on two grounds. We first discuss the refusal on the ground that Applicant's mark is likely to cause confusion in view of the marks in Registration Nos. 4119865[2] (**MOUNT RAINIER COFFEE COMPANY** in standard characters) and 4225177[3] (**MOUNT RAINIER COFFEE COMPANY** and design), both registrations for use on "coffee," under Trademark Act Section 2(d). Next, we consider the Examining Attorney's refusal to register on the ground that Applicant's mark is primarily geographically deceptively misdescriptive, under Trademark Act Section 2(e)(3).

## I. Likelihood of Confusion

### A. Applicable Law

Our determination under Trademark Act § 2(d) is based on an analysis of the probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *See In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973); *In re Majestic Distilling Co., Inc.,* 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003). In considering the evidence of record on these factors, we keep

---

[2] Registered March 27, 2012, on the Supplemental Register; **COFFEE COMPANY** disclaimed.

[3] Registered October 16, 2012, on the Principal Register; **MOUNT RAINIER COFFEE COMPANY** disclaimed.

in mind that "[t]he fundamental inquiry mandated by Section 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks." *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976); *see In re Azteca Rest. Enters., Inc.*, 50 USPQ2d 1209, 1210 (TTAB 1999).

## B. The Similarity or Dissimilarity and Nature of the Goods; the Similarity or Dissimilarity of Established, Likely-to-Continue Trade Channels.

Apparently conceding the issue, Applicant did not address these *du Pont* factors in its brief, so we offer only a brief explanation of our conclusion.

Applicant's goods are identified as

> Milk beverages containing espresso coffee and milk; milk products containing espresso coffee and milk, excluding ice cream, ice milk and frozen yogurt, *and*

> Espresso coffee containing milk; and sandwiches flavored with espresso coffee and milk.

The Registrant's goods are simply identified as "coffee."

The record makes abundantly clear that Applicant's goods are identical or very closely related to those in the cited registration. "Espresso coffee," an essential component of Applicant's goods, is a kind of "coffee." Although the espresso in Applicant's goods comes in the form of drinks consisting of espresso and milk (or milk and espresso), the combination of milk and espresso or other types of coffee is ubiquitous. *See, e.g.*, Cummings Coffee & Candy, http://cummingscoffee.com/ (November 3, 2014) (*First Ofc. Action*) (advertising the sale of espresso, cappuccino ("an Italian coffee drink . . . traditionally prepared with espresso, hot milk, and steamed-milk foam."),

and latte ("a coffee drink made with espresso and steamed milk")); Espresso Beverages, http://starbucks.com/menu/catalog/product (June 26, 2015) (*Final Ofc. Action*) (under the heading "Espresso Beverages," listing Caffe' Late [*sic*], Café Mocha, Carmel Macchiato, Flat White, etc.); Coffee Beverages, http://www.peets.com/stores/menus/coffee-espresso-beverages.htm (June 26, 2015) (*Final Ofc. Action*) (listing Espresso, Café au Lait, Caffe Macchiato, Cappuccino, etc.). And virtually every vendor of coffee beverages either makes drinks combining espresso and milk, or offers milk for customers to pour into their own coffee. Coffee is therefore identical or very closely related to drinks consisting of espresso and milk, and are sold in the same establishments to the same consumers. *In re Yawata Iron & Steel Co.*, 403 F.2d 752, 159 USPQ 721, 723 (CCPA 1968); *see In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (even though there was no evidence regarding channels of trade and classes of consumers, the Board was entitled to rely on this legal presumption in determining likelihood of confusion).

These *du Pont* factors strongly support a finding that confusion is likely.

### C. The Similarity or Dissimilarity of the Marks in Their Entireties as to Appearance, Sound, Connotation and Commercial Impression

In comparing the marks, we consider their appearance, sound, meaning, and commercial impression. *Palm Bay Imp., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005). "The proper test is not a side-by-side comparison of the marks, but instead 'whether the marks are sufficiently similar in terms of their commercial impression' such that persons who encounter the marks would be likely to assume a connection between the parties."

*Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012). "[I]n articulating reasons for reaching a conclusion on the issue of confusion, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties. Indeed, this type of analysis appears to be unavoidable." *In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985). Finally, we keep in mind that "[w]hen marks would appear on virtually identical goods . . ., as is the case here, the degree of similarity necessary to support a conclusion of likely confusion declines." *In re Max Capital Group Ltd.*, 93 USPQ2d 1243, 1248 (TTAB 2010) (citing *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992)).

Applicant's mark is **MT. RAINIER THE MOUNTAIN OF SEATTLE ESPRESSO & MILK** and design, depicted as follows:



The cited marks are **MOUNT RAINIER COFFEE COMPANY** (in standard characters; **COFFEE COMPANY** disclaimed) and the same words with a design, as follows:



(**MOUNT RAINIER COFFEE COMPANY** disclaimed.)

Although both registrations were cited as a bar to Applicant's registration, we need not consider Registrant's words-and-design mark at length. Lacking the drawing in the words-and-design mark, the standard-character version of Registrant's mark (the '865 Registration) is closer in appearance to Applicant's mark and identifies the same goods. If confusion is found likely in view of Registrant's standard-character mark, it will be unnecessary to consider Registrant's design mark; and if confusion is found not likely with Registrant's standard-character mark, it would be even less likely with Registrant's words-and-design mark. *See Max Capital Group Ltd.*, 93 USPQ2d at 1245.

The Examining Attorney contends that the marks are similar in that "each includes the virtually identical terms **MT. RAINIER** (Applicant's mark) and **MOUNT RAINIER** (Registrant's marks). *Ex. Att. Br.*, 6 TTABVUE 17. According to the Examining Attorney, the remainder of the wording in each mark is said to "create[] a less significant commercial impression" because **COFFEE COMPANY** is generic (and disclaimed) in Registrant's standard-character mark and **ESPRESSO & MILK** is (at least) highly descriptive (and disclaimed) in Applicant's mark. Further, the Examining Attorney argues that although Applicant's mark features design elements

absent from Registrant's standard-character mark, the word portion forms the dominant impression of Applicant's mark. *Id.*, 6 TTABVUE 18–19. She asserts that the image of Mt. Rainier accompanied by the words **THE MOUNTAIN OF SEATTLE** reinforce the impression made by the words **MT. RAINIER**, and thus do not distinguish the marks. (Although not close to Seattle, Mt. Rainier presumably earned this nickname because it is often visible from that city.) She also characterizes Applicant's remaining design elements as merely a commonly shaped carrier. *Id.*, 6 TTABVUE 19.

In contrast, Applicant argues that the only similar terms in the marks are treated as descriptive in the cited Registration, noting that Registrant's standard-character mark is on the Supplemental Register. *App. Br.*, 4 TTABVUE 15–16. "[W]hile a disclaimer does not remove the disclaimed matter from the mark, and perhaps the disclaimed matter remains the 'dominant' element of a mark that also contains generic terms, that does ***not*** mean that the disclaimed matter is a strong element of the mark. . . ." *Id.*, 4 TTABVUE 16–17. Applicant argues that the Examining Attorney's analysis relies on a dissection of the mark, and when considered in their entireties, "the overall differences in the . . . marks are sufficient to avoid a likelihood of confusion." *Id.*, 4 TTABVUE 18.

Applicant further notes that in addition to the two cited registrations, the USPTO has issued six registrations (other than the two cited as a bar to registration) for marks comprising the term **RAINIER** for use on bakery products, and "not all owned by the same party." *App. Br.*, 4 TTABVUE 19. Applicant concludes that such marks

are "relatively weak and entitled to only a narrow scope of protection." 4 TTABVUE 20 (citing J.T. McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §§ 11:85 and 11:88 (no date given)). Likewise, Applicant argues that the third-party registrations demonstrate that **RAINIER** is suggestive or descriptive of the identified goods. *Id.* at ("In the present case, **MOUNT RAINIER** or **RAINIER** used for food products is suggestive of a natural, healthy, wholesome, organic lifestyle of the rugged Pacific Northwest, unspoiled by the cares of urban living (including those of Seattle).").

* * *

We agree with the Examining Attorney that although they differ in some respects, Applicant's mark and the Registrant's standard-character mark are significantly similar. As they appear in Applicant's mark, the words **MT. RAINIER** are large, and they appear first as the mark would be read. *Presto Prods., Inc. v. Nice-Pak Prods. Inc.*, 9 USPQ2d 1895, 1897 (TTAB 1988) ("it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered"). Likewise, the first words of the cited mark are **MOUNT RAINIER**. These terms are essentially identical, as "Mt." is a common abbreviation of "mount," THE AMERICAN HERITAGE DICTIONARY (5th ed.), https://ahdictionary.com/word/search.html (Nov. 3, 2014) (*First Ofc. Action*), and would be pronounced identically.

The words **COFFEE COMPANY** in Registrant's mark and **ESPRESSO & MILK** in Applicant's are generic, or at least very highly descriptive, and therefore of little or no trademark significance. *In re Chatam Int'l Inc.*, 380 F.3d 1340, 71 USPQ2d

1944, 1946 (Fed. Cir. 2004) (generic term had "nominal commercial significance"). Similarly, because **ESPRESSO & MILK** is a product that would be sold by a **COFFEE COMPANY**, consumers encountering Applicant's mark are likely to mistakenly believe that the **MOUNT RAINIER COFFEE COMPANY** is offering a **MT. RAINIER** line of **ESPRESSO & MILK** drinks.

We find that the clear and dominant impression of both marks is the virtually-identical **MOUNT RAINIER** or **MT. RAINIER**, and the well-known mountain so named. *See Ex. Att. Br*. 6 TTABVUE 18.

Of course, we recognize that Applicant's mark also features the image of a mountain and the words **THE MOUNTAIN OF SEATTLE**, neither element being present in Registrant's mark. But while this is a difference between the marks, when Applicant's mark is considered as a whole, we agree with the Examining Attorney, *Ex. Att. Br*. 6 TTABVUE 18–19, that the mountain design and the words **THE MOUNTAIN OF SEATTLE** in Applicant's mark reinforce, rather than detract from, the impression made by the words **MT. RAINIER**. A customer seeing Applicant's mark would likely assume that the design is the image of Mt. Rainier. *See Herbko Int'l Inc. v. Kappa Books Inc.*, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002) ("[T]he puzzle design does not convey any distinct or separate impression apart from the word portion of the mark. Rather, it serves only to strengthen the impact of the word portion in creating an association with crossword puzzles."); *In re Swatch Grp. Mgmt. Servs. AG*, 110 USPQ2d 1751, 1762 (TTAB 2014) ("the combination of the design with the word **TOURBILLON** reinforces the singular impression conveyed by the mark as a whole,

which is nothing more than the significance of 'tourbillon'"), *aff'd mem.*, 599 F. App'x 959 (Fed. Cir. 2015). And the phrase **THE MOUNTAIN OF SEATTLE** is far less prominent than **MT. RAINIER** and again, it refers to Mt. Rainier, which reinforces the impression of **MT. RAINIER** in Applicant's mark. Thus, the nearly identical terms **MT. RAINIER** and **MOUNT RAINIER** dominate both of the marks at issue, and are entitled to greater weight in our assessment of whether confusion is likely. Nor would the marks be readily distinguished by Applicant's use of color or a circular carrier for its mark. The cited registration is not limited to its display in any particular color, and the "ordinary geometric shape that serves as a background for the word mark" in applicant's mark is not sufficiently distinctive to change the commercial impression conveyed by the mark. *In re Dixie Rests. Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1534 (Fed. Cir. 1997); *In re Kysela Pere et Fils Ltd.*, 98 USPQ2d 1261, 1267 (TTAB 2011) ("And certainly the oval designs in the marks are merely background . . . and do not make a strong commercial impression.") (citation omitted).

As for the stylization of the wording in Applicant's mark, we note that the cited mark is registered in standard characters, so we must assume that it could be displayed in any size, color, or font, including a size, color, and font identical to those in Applicant's mark. *In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1909 (Fed. Cir. 2012); *Citigroup Inc. v. Capital City Bank Group Inc.*, 637 F.3d 1344, 98 USPQ2d 1253, 1258–59 (Fed. Cir. 2011). The marks are thus quite similar in appearance and meaning, because **M[OUN]T RAINIER** is the dominant part of both marks, and because the additional matter does not detract from, and to some extent reinforces, that

dominant impression. The marks are obviously not identical, and would differ somewhat in sound if vocalized in their entirety. Nevertheless, upon seeing Applicant's mark, potential purchasers are likely to view it as substantially similar to Registrant's mark.

Upon consideration of both marks in their entireties, we find that they are substantially similar in appearance, sound, meaning, and commercial impression. This factor supports a finding that confusion is likely.

### D. Strength of the Prior Registration

Applicant argues that the mark in the cited registration is inherently weak, and therefore entitled to a very narrow scope of protection. First, Applicant points out that Registrant's mark is on the Supplemental Register. *App. Br.* 4 TTABVUE 15 ("Granting broad protection to the word portion of the cited registrations would essentially nullify the effect of choosing to register the word mark on the Supplemental Register and eviscerate the disclaimer in the word-plus-design Principal Registration."). Applicant argues that "[a]lthough a strict reading of the Lanham Act may permit the [USPTO] to cite Supplemental Registrations[,] . . . as Professor McCarthy has noted[,] this is 'strange and unsettling' . . . ." *App. Br.* 4 TTABVUE 16 (quoting McCarthy § 19:37). But however strange it may appear to Applicant, this interpretation of the statute is required by longstanding and binding precedent of the Federal Circuit, which has responded to Professor McCarthy's characterization by stating that the interpretation is supported both by the plain terms of the statute and the legislative history. *Towers v. Advent Software Inc.,* 913 F.2d 942, 16 USPQ2d 1039, 1042 (Fed. Cir. 1990); *see also In re Research and Trading Corp.*, 793 F.2d 1276, 230

USPQ 49 (Fed. Cir. 1986); *In re Clorox Co.*, 578 F.2d 305, 198 USPQ 337 (CCPA 1978). In *Clorox*, the Court of Customs and Patent Appeals held that a mark registered on the Supplemental Register is "a mark registered in the Patent and Trademark Office," and thus may be cited as a bar to registration under Trademark Act Section 2(d). *Id.* at 340. In *Research and Trading*, the Federal Circuit further observed that "[i]t is not material whether or not registration on the Supplemental Register implies that there is a degree of descriptiveness to that mark. . . . Such registration may be cited under section 2(d) in a determination of likelihood of confusion, an inquiry separate from that of descriptiveness. 230 USPQ at 49 And in *Towers,* 16 USPQ2d at 1042, the Court confirmed the *Clorox* rule that "likelihood of confusion can be found even if a term is merely descriptive and does not identify source: Registration on the Supplemental Register is sufficient, and a showing of trade identity rights in the form of secondary meaning is unnecessary."

Citing the Board's opinion in *In re Hunke & Jochheim*, 185 USPQ 188 (TTAB 1975), Applicant argues that "the scope of protection for a descriptive mark has been limited to the subsequent use and registration of the '***substantially identical***' mark for 'substantially similar' goods." *App. Br.* 4 TTABVUE 16 (emphasis in original). We do not read *Hunke & Jochheim* as limiting the citation of Supplemental Registrations or applying a different Section 2(d) analysis when one is cited. First, *Hunke & Jochheim* predated the appellate court's decisions in *Research and Trading* and *Clorox*, which settled the propriety of citing marks on the Supplemental Register as a bar to registration. But in case there was any doubt, the Board later expressly disavowed

Applicant's theory.

> [W]e have kept in mind that the cited mark is registered on the Supplemental Register. Applicant argues that the scope of protection to which the registrant's mark is entitled is narrower than a mark registered on the Principal Register, and that under this standard applicant's mark is sufficiently dissimilar from the cited registration to avoid confusion.

*In re Smith & Mehaffey*, 31 USPQ2d 1531, 1533 (TTAB 1991). The Board went on to explain that the strength of the cited mark is — as always — relevant to assessing the likelihood of confusion under the *du Pont* framework. Most marks are on the Supplemental Register because they are descriptive, and the weaker the mark on the fanciful to generic continuum, the less its ability to preclude registration of a similar mark under Section 2(d). *Id.* (citing *Clorox*, 198 USPQ at 341). But there is no categorical rule that citation of registrations on the Supplemental Register is limited to registrations of "'substantially identical' marks for 'substantially similar goods,'" or that a different test for likelihood of confusion should be applied in such cases.

In this case, Applicant presumes that the cited mark is on the Supplemental Register because it was primarily geographically descriptive of the Registrant's "coffee," and that appears likely to us. As Applicant clearly recognizes, the place named in Registrant's mark is Mount Rainier, a volcanic mountain in the state of Washington, and the address in the cited registration locates Registrant in Puyallup, Washington, in the general vicinity of Mount Rainier.[4] The record thus suggests that Registrant's

---

[4] The Board may take judicial notice of the locations of Puyallup and Mount Rainier. *See Pinocchio's Pizza Inc. v. Sandra Inc.*, 11 USPQ2d 1227, 1229 n. 6 (TTAB 1989) (taking judicial notice of the location of Catonsville, Maryland).

mark was deemed "primarily geographically descriptive" at the time of registration in that Registrant is located in the general vicinity of Mount Rainier. *See* Trademark Act § 2(e)(2). Such marks are, however, not generic designations, and are usually eligible for registration on the Principal Register upon a showing of acquired distinctiveness.[5] *See* Trademark Act § 2(f).[6] While we cannot assume that Registrant's mark is now eligible for registration on the Principal Register, the cited mark does not, as a whole, appear to be generic or highly descriptive of Registrant's goods.

Applicant quotes *Sweats Fashions Inc. v. Pannill Knitting Co. Inc.*, 833 F.2d 1560, 4 USPQ2d 1793 (Fed. Cir. 1987), and other cases, arguing that the cited registration is descriptive, and therefore "protects only the particular manner" in which the mark is displayed. *App. Br.* 4 TTABVUE 17–18. Apart from the fact that the cited mark is registered in standard characters, and therefore is not limited to any particular display, the facts in this case differ from *Sweats Fashions*. In that case, Sweats opposed

---

[5] Registration on the Supplemental Register is an admission that the mark was, at the time of registration, ineligible for registration on the Principal Register. *Perma Ceram Enters. Inc. v. Preco Indus. Ltd.*, 23 USPQ2d 1134, 1137 n. 11 (TTAB 1992). While that presumption provides a useful frame of reference, registration on the Supplemental Register does "not constitute an admission that the mark has not acquired distinctiveness." Trademark Act § 27. In any event, neither the Board nor the Supplemental Registrant is bound by such an "admission." *In re Future Ads LLC*, 103 USPQ2d 1571, 1574 (TTAB 2012) ("Registration on the Supplemental Register is prima facie evidence that, at least at the time of registration, the registered mark was merely descriptive. However, prima facie evidence can be rebutted.") (citation omitted); *In re Hester Indus.*, 230 USPQ 797, 798 (TTAB 1986) ("It is true that a registration on the Supplemental Register is, in effect, an admission that the applicant believed the mark in question was merely descriptive when the application was filed or when it was amended to seek registration on the Supplemental Register. . . . However, we are not bound by the applicant's conclusions on this question. . . .").

[6] We note that there is no indication that Mt. Rainier is known as a source of coffee or otherwise associated with or descriptive of the beverage.

Pannill's application to register **ULTRA SWEATS** on the Principal Register for sweatshirts and sweatpants (**SWEATS** disclaimed), citing ownership of a registration on the Principal Register for **SWEATS** and design (**SWEATS** disclaimed) for "active sportswear." But unlike the case at bar, it was clear in *Sweats Fashions* that the only common term in the marks was **SWEATS**, which was clearly *generic* (or at least very highly descriptive) for some of both parties' goods. *Sweats Fashions*, 4 USPQ2d at 1796–97.

Arguing that the term is weak, Applicant also points to several third-party registrations comprising the term **RAINIER**.[7] *App. Br.* 4 TTABVUE 20. Under the sixth *du Pont* factor, the Board must consider evidence of "[t]he number and nature of similar marks *in use* on similar goods." *du Pont*, 177 USPQ at 567 (emphasis added). The type of strength (or its inverse, weakness) addressed by the sixth *du Pont* factor is sometimes referred to as market or commercial strength. This is the degree of association in the mind of the consumer of the mark with the source of the goods or services based on the exclusivity (and sometimes renown) of the mark in the relevant market. *See In re Chippendales USA, Inc.*, 622 F.3d 1346, 96 USPQ2d 1681, 1686 (Fed. Cir. 2010) ("A mark's strength is measured both by its conceptual strength (distinctiveness) and its marketplace strength (secondary meaning)."); *Couch/Braunsdorf Affinity, Inc. v. 12 Interactive, LLC*, 110 USPQ2d 1458, 1476 (TTAB 2014); *Tea*

---

[7] In addition to the cited registrations, Applicant cites six registrations, four made of record by the Examining Attorney with her first Office Action (all four owned by a single party), and two submitted by Applicant (both owned by another party). Each of the registered marks comprises the word **RAINIER**, and — unlike the application and registration at issue in this case — all six are registered for use on bakery products.

*Board of India v. Republic of Tea Inc.*, 80 USPQ2d 1881 (TTAB 2006). Exclusivity of use is relevant because, as Applicant put it, "the more users there are of similar marks, the narrower the scope of protection afforded to each mark, and the less likelihood of confusion there is between any two marks." *App. Br.* 4 TTABVUE 20.

But Applicant's citation of third-party registrations as evidence of market weakness is unavailing because third-party registrations standing alone, are not evidence that the registered marks are in use on a commercial scale, let alone that consumers have become so accustomed to seeing them in the marketplace that they have learned to distinguish among them by minor differences. *Smith Bros. Mfg. Co. v. Stone Mfg. Co.*, 476 F.2d 1004, 177 USPQ 462 (CCPA 1973); *AMF Inc. v. Am. Leisure Prods., Inc.*, 474 F.2d 1407, 177 USPQ 268 (CCPA 1973); *Richardson-Vicks, Inc. v. Franklin Mint Corp.*, 216 USPQ 989 (TTAB 1982). While the registrations do show that several parties have seen fit to register **RAINIER** marks, "[t]he purchasing public is not aware of registrations reposing in the Patent [and Trademark] Office." *Smith Bros.*, 177 USPQ at 462–63. Referring to this type of strength, precedent dictates that "registration evidence may not be given any weight." *E.g.*, *Olde Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d 200, 22 USPQ2d 1542, 1545 (Fed. Cir. 1992) (citing *AMF Inc.*, 177 USPQ at 269). In any event, "the existence of confusingly similar marks already on the register will not aid an applicant to register another confusingly similar mark." *Lilly Pulitzer, Inc. v. Lilli Ann Corp.*, 376 F.2d 324, 153 USPQ 406, 407 (CCPA 1967) (citing *In re Helene Curtis Indus., Inc.*, 305 F.2d 492, 134 USPQ 501 (CCPA 1962)).

Professor McCarthy's treatise is not to the contrary. The sections Applicant cites,

*App. Br.* 4 TTABVUE 20, concern the effect of third-party *use* — not third-party registrations — on the strength of a mark. *See* McCarthy, §§ 11:85 ("Crowded Trademark Markets"); 11:88 ("Third Party Uses"). More relevant in this case is the section of McCarthy's treatise on third-party *registrations*: "The mere citation of third party registrations is not proof of third party uses for the purpose of showing a crowded field and relative weakness. Third party registrations are not evidence of use so as to have conditioned the mind of prospective purchasers." McCarthy, § 11:89 (citations and quotation marks omitted). While evidence of extensive third-party *use* of a term on or in connection with the same or similar goods in the relevant marketplace is clearly probative of the term's weakness as a trademark, *In re Broadway Chicken Inc.*, 38 USPQ2d 1559, 1565–66 (TTAB 1996) ("Evidence of widespread third-party use, in a particular field, of marks containing a certain shared term is competent to suggest that purchasers have been conditioned to look to the other elements of the marks as a means of distinguishing the source of goods or services in the field."), Applicant has not pointed to any evidence in this record suggesting that **MOUNT RAINIER** is in fact frequently used in connection with coffee. *See Sweats Fashions*, 4 USPQ2d at 1798 (the Board need not consider *du Pont* factors unsupported by evidence).

However, third-party registrations are relevant evidence of the inherent or conceptual strength of a mark or term because they are probative of how terms are used in connection with the goods or services identified in the registrations. "Third party registrations show the sense in which the word is used in ordinary parlance and may

show that a particular term has descriptive significance as applied to certain goods or services." *E.g.*, *Institut National Des Appellations D'Origine v. Vintners Int'l Co.*, 958 F.2d 1574, 22 USPQ2d 1190, 1196 (Fed. Cir. 1992). *See also Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 115 USPQ2d 1671, 1674–75 (Fed. Cir. 2015); *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 116 USPQ2d 1129, 1136 (Fed. Cir. 2015); *In re Box Solutions Corp.*, 79 USPQ2d 1953, 1955 (TTAB 2006). Third-party registrations used in this manner are not evidence that customers are accustomed to seeing the use of other, similar, marks in the marketplace, but rather evidence that a term is sugges-tive or descriptive of the relevant goods or services. Such terms may be conceptually weak because the more descriptive a term is, the less likely prospective purchasers are to attach source-identifying significance to it. But even if Applicant's third-party registrations are sufficient for that purpose,[8] there appears to be no dispute in this case as to the meaning of **MOUNT RAINIER** or its significance with respect to the goods at issue. It is a mountain in the state of Washington and probably the general vicinity of Registrant's business. But other than that, it has no apparent significance with respect to the goods in this case.

We thus recognize that Registrant's **MOUNT RAINIER COFFEE COMPANY**

---

[8] Evidence of the extensive registration and use of a term by others can be "powerful" evidence of weakness. *Juice Generation*, 115 USPQ2d at 1674; *Jack Wolfskin*, 116 USPQ2d at 1136. But Applicant offers no third-party use and only six third-party registrations owned by just two parties for different goods (bakery products). By comparison, in *Juice Generation*, there were at least twenty-six relevant third party uses or registrations of record, *see* 115 USPQ2d at 1672 n. 1, and in *Jack Wolfskin*, there were at least fourteen, 116 USPQ2d at 1136 n. 2.

mark is likely geographically descriptive. But geographic descriptiveness is a separate inquiry from determining likelihood of confusion, and even if a geographically descriptive mark may not be given a broad scope of protection, the fact that it is registered on the Supplemental Register is enough for it to ground the *ex parte* refusal of an application for registration of a similar mark for use on the same or closely related goods or services. *Cf. Research and Trading*, 230 USPQ at 49; *Towers,* 16 USPQ2d at 1042.

### E. Balancing the Factors

Upon consideration of all of the evidence and argument of record, we find that Applicant's goods are very closely related to the goods identified in the cited registration, and that the channels of trade and relevant consumers for the goods are identical or substantially overlap. Although the mark in the cited registration may be geographically descriptive, it is registered on the Supplemental Register and thus may prevent the registration of Applicant's similar mark for such closely related goods. In this case, while the marks are not identical, they are similar enough that their use on identical or closely related goods is likely to cause confusion. We have carefully considered Applicant's evidence and argument, including that regarding the weakness of the cited registration, but we find that it does not support a different conclusion in this case. We conclude that Applicant's mark is likely to cause confusion in view of the mark in the cited prior registration.

## II. Whether Applicant's Mark Is Primarily Geographically Deceptively Misdescriptive?

The Examining Attorney initially refused registration under Trademark Act

§§ 2(e)(3) and 2(a), on the ground that Applicant's mark is primarily geographically deceptively misdescriptive[9] or geographically deceptive. Subsequently, citing *In re S. Park Cigar, Inc.*, 82 USPQ2d 1507, 1509, n. 3 (TTAB 2007), the Examining Attorney withdrew the refusal under Section 2(a). Nonetheless, the Examining Attorney maintained and made final the refusal to register under Section 2(e)(3), on the ground that Applicant's mark is geographically misdescriptive, on account of its inclusion of the word **SEATTLE**.

Applicant and the Examining Attorney agree that the correct standard is set out in *In re Miracle Tuesday LLC*, 695 F.3d 1339, 104 USPQ2d 1330 (Fed. Cir. 2012):

1. Is "the primary significance of the mark . . . a generally known geographic location?";

2. Is "the consuming public . . . likely to believe the place identified by the mark indicates the origin of the goods bearing the mark, when in fact the goods do not come from that place?"; and

3. Would "the misrepresentation [be] a material factor in the consumer's decision" to purchase the goods?

*Id.*, 104 USPQ2d at 1332 (quoting *In re Cal. Innovations, Inc.*, 329 F.3d 1334, 66 USPQ2d 1853, 1856 (Fed. Cir. 2003)). They dispute, however, the appropriate focus of a refusal to register under Trademark Act § 2(e)(3).

Applicant's composite mark prominently features the wording **MT. RAINIER** and the image of a mountain (presumably Mt. Rainier). At the bottom rim of the circular mark, in smaller letters, is the descriptive (and disclaimed) wording **ESPRESSO &**

---

[9] Although each word in Trademark Act § 2(e)(3) has significance we will, for ease of reference only, refer to this adjectivally burdened ground for refusal as "geographically misdescriptive."

**MILK**. And in the middle of the mark, at the base of the depicted mountain, is the wording **THE MOUNTAIN OF SEATTLE** in lettering considerably smaller than either of the other literal elements.

The Examining Attorney employs a narrow focus on the word **SEATTLE**, noting that **SEATTLE** is a known geographic location, and that "[t]he additional elements in the mark do not detract from its primarily geographic significance." *E.A. Brief* 6 TTABVUE 7–8. As the Examining Attorney put it, "the focus under Section 2(e)(3) is on whether *the term* in question is primarily geographic in the context of the mark, rather than on whether the geographic reference dominates the mark." *Id.* at 8–9 (emphasis added) (citing *In re Sharky's Drygoods Co.*, 23 USPQ2d 1061 (TTAB 1992)). Applicant, on the other hand, argues that the first element of the Federal Circuit's test requires a determination of "the primary significance of ***the mark***." *App. Br.* 4 TTABVUE 8 (emphasis in original). Thus, Applicant argues, the focus must be on the mark as a whole, the primary significance of which is Mt. Rainier, not Seattle. *App. Br.* 4 TTABVUE 6–9 (emphasis added).

As noted, registration was initially refused under Trademark Act Sections 2(a) and 2(e)(3), although the refusal under the former subsection was later withdrawn. To the extent relevant here, Section 2 provides:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
>
> (a) *Consists of or comprises* . . . deceptive . . . matter . . .
>
> . . .

> (e) *Consists of a mark* which, . . . (3) when used on or in connection with the goods of the applicant is primarily geographically deceptively misdescriptive of them. . . .

Trademark Act § 2.

The language of Section 2(a) prohibits registration of any mark which "consists of or comprises" deceptive matter. Under Section 2(a), a mark is unregistrable if it merely "includes" deceptive matter. *In re Fox*, 702 F.3d 633, 105 USPQ2d 1247, 1250 (Fed. Cir. 2012).[10] The focus is on the "deceptive . . . matter," not the entire mark.

By contrast, a refusal to register under Section 2(e)(3) is appropriate only if what the applicant seeks to register "consists of a mark" which is geographically misdescriptive. To be sure, refusal to register under Section 2(e)(3) does not require that the mark be only or entirely geographic. But the focus under that subsection is on whether the mark — rather than merely some part of it — is "primarily geographically deceptively misdescriptive." To hold otherwise would be to ignore the distinction drawn in the statute between the focus of Sections 2(a) ("[c]onsists of or comprises . . . deceptive . . . matter") and 2(e)(3) ("[c]onsists of a mark"). As it appears before us, the subject application is refused registration under Section 2(e)(3), not 2(a), and at least under 2(e)(3),[11] it is clear that the determination of geographic misdescriptiveness must be based on consideration of the whole mark. "Under the first prong of the

---

[10] *Fox* involved a refusal to register pursuant to Section 2(a)'s prohibition on the registration of marks which "consist[] of or comprise[] . . . scandalous matter." Nonetheless, the same phrase construed in *Fox* ("[c]onsists of or comprises") applies to all categories of marks made unregistrable by Section 2(a), including marks which consist of or comprise deceptive matter.

[11] In *In re California Innovations*, 329 F.3d 1334, 66 USPQ2d 1853 (Fed. Cir. 2003), the Court of Appeals for the Federal Circuit held that the 1993 amendments to the Trademark Act

test — whether the mark's primary significance is a generally known geographic location — a composite mark such as the applicant's proposed mark must be evaluated as a whole." *In re Save Venice New York Inc.*, 259 F.3d 1346, 59 USPQ2d 1778, 1782 (Fed. Cir. 2001) (citations omitted). The Examining Attorney's reliance on *Sharky's Drygoods* in support of a narrow focus on the geographic matter in a compound mark under Section 2(e)(3) is misplaced. That case arose under Section 2(a), and as we have seen, the subsections differ in their approach to this question.

This is not to say that a geographic term in a compound mark cannot dominate the commercial impression of the mark in a way that renders the primary significance of the entire mark geographic. Each case is decided upon its own particular and unique set of facts. Nevertheless, this simply is not the case with the word **SEATTLE** in Applicant's mark. In Applicant's mark, the word **SEATTLE** plays a relatively minor role visually, but more importantly, it is part of the phrase **THE MOUNTAIN OF**

---

(implementing the North American Free Trade Agreement) "obliterated the distinction between geographically deceptive marks and primarily geographically deceptively misdescriptive marks," resulting in the requirement for a showing of materiality in a Section 2(e)(3) analysis. *Id.* at 1856. But the Court made no mention of the difference we have outlined in the focus of the two subsections. Although the Court's restatement in *California Innovations* of the first prong of the standard for refusal under Section 2(e)(3) suggests that it expects the USPTO to look at the entire mark, *id.* ("if . . . the primary significance of the mark is a generally known geographic location"), that case and those that followed it were Section 2(e)(3) cases, and there was no occasion to consider the narrower focus required by Section 2(a). Thus, despite the statement that the distinction between the subsections was "obliterated," there is no indication of whether the 1993 amendments had any effect on the narrower focus of Section 2(a). Does a refusal under Section 2(a) for geographic deceptiveness now require consideration of the mark as a whole, contrary to the language of the statute? Just as we cannot read into the statutory language of Section 2(e)(3) the phrase "or comprises," it would seem the reverse would also be true, that we cannot delete the phrase "or comprises" from Section 2(a). We need not answer that question today because, as noted, the Examining Attorney withdrew the refusal to register pursuant to Section 2(a).

**SEATTLE**, which appears at the base of a mountain, all of which is underneath the large and dominant wording **MT. RAINIER**. Considering Applicant's mark as a whole — the way it would be seen by prospective purchasers of the goods — we cannot conclude that it is "primarily geographically deceptively misdescriptive." While there is no doubt that the term **SEATTLE** identifies a generally known geographic location, as it is used in the context of Applicant's mark, we do not find that the relevant public would consider it to indicate of the origin of the goods.

Even under Trademark Act Section 2(a), which permits a narrower focus on the allegedly deceptive matter, a refusal to register may not be based on a term taken out of context when doing so would change its significance in the mark. For instance, in *A.F. Gallun & Sons Corp. v. Aristocrat Leather Prods., Inc.*, 135 USPQ 459 (TTAB 1962), the mark **COPY CALF** was refused registration as deceptive when used as a mark on wallets made of imitation leather. The Board reversed. While the word **CALF** by itself might lead customers to believe that the applicant's goods were genuine leather, the use of **COPY** before **CALF** in the mark made clear that the applicant's goods were in fact not made of calfskin. *Id.* at 460. The impression of the word depended on whether it was considered within or out of the context of the mark. *See also In re Sharky's Drygoods Co.*, 23 USPQ2d at 1062 (TTAB 1992) (reversing refusal under Section 2(a) to register **PARIS BEACH CLUB** because in context, **PARIS** is part of an incongruous and humorous phrase, and would not be understood as the geographic origin of the goods).

### III. Conclusion

We have fully considered all of the argument and evidence of record. We find that

Applicant's mark is likely to cause confusion in view of the cited registration under Trademark Act § 2(d). But we do not find Applicant's mark to be primarily geographically deceptively misdescriptive under Trademark Act § 2(e)(3).

*Decision*: The refusal to register pursuant to Trademark Act § 2(d) is AFFIRMED. The refusal to register pursuant to Trademark Act § 2(e)(3) is REVERSED.