THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: December 23, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*Jill E. Peterson*

*v.*

*Awshucks SC, LLC*
_____

Cancellation No. 92066957
_____

John M. Cone of Ferguson Braswell Fraser Kubasta PC,
    for Jill E. Peterson.

B. Craig Killough of Barnwell Whaley Patterson & Helms LLC,
    for Awshucks SC, LLC.

_____

Before Bergsman, Pologeorgis, and Lebow,
    Administrative Trademark Judges.

Opinion by Lebow, Administrative Trademark Judge:

Respondent, Awshucks SC, LLC, has, at all material times, owned registrations

on the Principal Register for "restaurant and bar services" for the mark A.W.

SHUCK'S (in standard characters),[1] and for the mark A.W. SHUCK'S and Design as

---

[1] Registration No. 4524998, issued May 6, 2014, based on Respondent's allegation of use in commerce under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), alleging a date of

shown below:



A.W. SHUCK'S [2]

Petitioner, Jill E. Peterson., filed a petition to cancel the registrations on the ground that Respondent has abandoned use of the registered marks. Respondent denied the salient allegations in its answer to the petition. [3] For the reasons that follow, we grant the petition for cancellation in part, and deny it in part.

## I.  The Record

The record includes the pleadings, Respondent's registration files pursuant to

---

first use in commerce and anywhere of January 1, 1979; Section 8 declaration of use accepted July 15, 2020.

[2] Registration No. 1510463, issued October 25, 1988, based on Respondent's allegation of use in commerce under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), alleging a date of first use in commerce and anywhere of January 1, 1979.

[3] Respondent also asserted several so-called "affirmative defenses," including failure to state a claim, waiver, estoppel, res judicata, lack of standing, and failure to establish harm. Failure to state a claim upon which relief may be granted is not an affirmative defense. *John W. Carson Found. v. Toilets.com, Inc.*, 94 USPQ2d 1942, 1949 (TTAB 2010). Lack of standing is also not an affirmative defense. Standing, which we now refer to as an entitlement to a statutory cause of action (see note 34 *infra*), is an element of Petitioner's asserted claim that she must prove as part of her case. *See Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982); *Blackhorse v. Pro Football Inc.*, 98 USPQ2d 1633, 1637 (TTAB 2011). The asserted defenses of waiver, estoppel, and res judicata are conclusory allegations lacking a factual basis and specific alleged misconduct on the part of Petitioner. *See e.g.*, *Midwest Plastic Fabricators Inc. v. Underwriters Labs. Inc.*, 5 USPQ2d 1067, 1069 (TTAB 1987) ("respondent's … defense does not include allegations that state a defense of unclean hands. There are no specific allegations of conduct by petitioner that, if proved, would prevent petitioner from prevailing on its claim; instead, the allegations … are either unclear, non-specific, irrelevant to a pleading of unclean hands, or merely conclusory in nature."). Moreover, Respondent did not present any evidence or argument with respect to these asserted defenses at trial, so they are deemed waived *See, e.g.*, *Alcatraz Media Inc. v. Chesapeake Marine Tours Inc.*, 107 USPQ2d 1750, 1752 n.6 (TTAB 2013); *Miller v. Miller*, 105 USPQ2d 1615, 1616 n.3 (TTAB 2013).

Trademark Rule 2.122(b)(1), 37 C.F.R. § 2.122(b)(1), and the following submissions by the parties:

A. **Petitioner's Evidence:** Notice of reliance on Respondent's responses to interrogatories and requests for admission, news articles, Internet third-party website excerpts and searches;[4] testimony declarations of Jill Peterson ("Petitioner Decl.") and Nicholas Peterson ("Peterson Decl.");[5] cross-examination testimony of John Keener ("Keener cross");[6] and the rebuttal testimony declarations of Michael Bowers ("Bowers R-Decl."), John Cone ("Cone R-Decl.") and Staci Bednarski ("Bednarski R-Decl.").[7]

B. **Respondent's Evidence:** Notice of reliance on printouts from the USPTO's assignment database including the cover sheet and assignment of Trademark Registration No. 4524998 to Respondent,[8] and on Petitioner's responses to requests for admission;[9] testimony declarations of John Keener ("Keener Decl."),[10] Elizabeth Allen ("Allen Decl."),[11] Jeffrey Fuquay ("Fuquay Decl."),[12] Tate Arthur ("Arthur Decl."),[13] and Mandy Coleman ("Coleman Decl.");[14] and the oral redirect examination of John Keener ("Keener redirect").[15]

---

[4] 20 TTABVUE.

[5] 21 TTABVUE.

[6] 31 TTABVUE 4-36.

[7] 32-33 TTABVUE.

[8] 22 TTABVUE. It was unnecessary for Respondent to submit the registration file for its subject Registration No. 4524998 since it is automatically of record. *See* Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b). Duplication of evidence clutters the record.

[9] *Id.* Only the admissions are properly of record. Trademark Rule 2.120(k)(3)(i), 37 C.F.R. § 2.120(k)(3)(i). "[U]nlike an admission (or a failure to respond which constitutes an admission), the denial of a request for admission establishes neither the truth nor the falsity of the assertion, but rather leaves the matter for proof at trial. *Cf.* Fed. R. Civ. P. 36(b)." *Life Zone Inc. v. Middleman Grp. Inc.*, 87 USPQ2d 1953, 1957 n.10 (TTAB 2008).

[10] 23 TTABVUE.

[11] 24 TTABVUE.

[12] 25 TTABVUE.

[13] 26 TTABVUE.

[14] 27 TTABVUE.

[15] 31 TTABVUE 36-38.

## II.    Preliminary Issues

### A.    Design Mark Registration Abandoned After Filing of the Petition

USPTO records for the mark A.W. SHUCK'S and Design mark (Registration No. 1510463) at issue in this proceeding show that a renewal application and declaration of use was not filed in support of that registration within the grace period ending on April 25, 2019, approximately 17 months after this proceeding commenced.

When it comes to the attention of the Board that a registration that is the subject of a cancellation proceeding lapses during the proceeding, the Board will usually, pursuant to Trademark Rule 2.134(b), 37 C.F.R. § 2.134(b), issue an order allowing the respondent time to show cause why the cancellation of such registration should not be deemed the equivalent of a cancellation by request of the respondent without the consent of the petitioner and should not result in entry of judgment against the respondent. *See Marshall Field & Co. v. Mrs. Fields Cookies*, 11 USPQ2d 1154, 1155 (TTAB 1989); *C.H. Guenther & Son Inc. v. Whitewing Ranch Co.*, 8 USPQ2d 1450 (TTAB 1988); TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 602.02(b) (2020).

The purpose of an order to show cause in that situation is to prevent a respondent from intentionally mooting a cancellation (thereby avoiding judgment), and to give the respondent an opportunity to submit a showing that the cancellation of that registration was the result of inadvertence or mistake, in which case judgment would not be entered against it. *See, e.g., Marshall Field*, 11 USPQ2d at 1156 (where registrant stated that failure to file a Section 8 affidavit was result of deliberate business decision made prior to commencement of proceeding and not to avoid

judgment, judgment was not entered as to that ground); *C.H. Guenther & Son,* 8 USPQ2d at 1452 (failure to renew was unintentional and not due to abandonment); *Abraham's Seed v. John One Ten,* 1 USPQ2d 1230, 1232 (TTAB 1986) (respondent's belief that it was improper to file a Section 8 affidavit since "the cancellation action had priority," while erroneous, was treated as sufficient showing of cause to avoid entry of judgment.).

The failure to maintain and renew Registration No. 1510463 was not brought to the Board's attention by the parties during the proceeding, so it comes to our attention only now, but with sufficient information to make unnecessary the issuance of a show cause order. *See Orange Bang, Inc. v. Ole Mexican Foods, Inc.,* 116 USPQ2d 1102, 1110 (TTAB 2015) (Board exercised discretion not to issue show cause order where respondent's intent was manifest). Here, John Keener, Respondent's sole owner and member, testified that the mark in that registration is no longer used and that he does not intend to use it again in the future.[16]

Moreover, Respondent asserts in its brief that it "did not apply for renewal of Registration No. 1,510,463 under Lanham Act Section 9 when due. Registration No. 1,510,463 included a design that is no longer used. The Registration is due to be administratively canceled."[17] Accordingly, we deem Respondent's failure to maintain and renew that registration the equivalent of a cancellation by request of Respondent without the consent of the Petitioner and hereby grant the petition to cancel and enter

---

[16] 31 TTABVUE 11, 25-26 (Keener Cross).

[17] 43 TTABVUE 10 (Respondent's Brief). The USPTO formally cancelled that registration on November 30, 2020.

judgment against Respondent as to that registration on Petitioner's claim of abandonment. *Marshall Field*, 11 USPQ2d at 1156.

**B. Respondent's Motion to Strike the Testimony of Staci Bednarski**

Prior to briefing, Respondent moved to strike the testimony of Petitioner's rebuttal witness, Staci Bednarski, on the basis that Petitioner failed to disclose her as a potential witness in Petitioner's pretrial rebuttal disclosures, "or at any time prior thereto."[18] The Board deferred ruling on that motion until final decision.[19] Respondent raised an objection on the same basis in its trial brief.[20]

Before her rebuttal testimony period opened, Petitioner served Respondent with her rebuttal pretrial disclosures.[21] The disclosures identified two witnesses: (1) Michael Bowers, an investigator who was "expected to testify as to the signs, decorative prints and objects and licenses displayed at the A.W. SHUCKS restaurant at 208 King Street, Charleston SC"; and (2) John Cone, Petitioner's attorney of record, who "may testify about his search and examination of the records of the Secretary of State for South Carolina and records relating to the ownership of domain names."[22]

---

[18] 34 TTABVUE 7.

[19] 39 TTABVUE 3-4. The Board also deferred until final decision Respondent's argument that we could construe as an objection to improper rebuttal. *Id*. 2-3. However, Respondent did not renew that objection in its brief, so it is waived. *See Gen. Mills Inc. v. Fage Dairy Processing Indus. SA*, 100 USPQ2d 1584, 1592 n.7 (TTAB 2011) (objection to testimony deemed waived because it was not maintained in brief), *judgment set aside on other grounds*, 110 USPQ2d 1679 (TTAB 2014) (non-precedential).

[20] 43 TTABVUE 29-30 (Respondent's Brief).

[21] 37 TTABVUE 10 (Declaration of John Cone, ¶ 9, in support of Petitioner's opposition to Respondent's motion to strike).

[22] *Id*. at 21-22 (Exhibit 2).

During Petitioner's rebuttal testimony period, in addition to the disclosed witnesses, Petitioner also filed the testimony declaration of Staci Bednarski, a legal assistant and employee of Petitioner's attorney's law firm who had not been disclosed.[23] Petitioner presented Ms. Bednarski's testimony to authenticate certain documents related to the retail licenses issued to the business located at 208 King Street, Charleston, SC.[24] According to Petitioner, the purpose of her testimony, (as well as the testimony of Mr. Bowers and Mr. Cone), was to show that a different entity—AWS SHACK, LLC, and not Respondent—was listed as the operator of the restaurant on the Retail and On Premise Beer & Wine Licenses for that location.[25]

Petitioner asserts that "[w]hile it is true that Ms. Bednarski's name was not mentioned in the Disclosure, the subject matter of her Declaration was exactly as disclosed in the pre-trial disclosure, except that in the Disclosure it was attributed to the attorney not to the legal assistant."[26] "The fact that it was in a Declaration by the Legal Assistant with firsthand knowledge, rather than the attorney who directed the investigation, does not prejudice [Respondent]."[27]

We find the substitution of the Petitioner's attorney's legal assistant for Petitioner's attorney, for the same authentication purpose, to be a distinction without a difference. *See Kate Spade LLC v. Thatch, LLC*, 126 USPQ2d 1098, 1102 (TTAB

---

[23] 32-33 TTABVUE.

[24] 33 TTABVUE.

[25] 42 TTABVUE 15, 22-23, 42 (Petitioner's Brief).

[26] 37 TTABVUE 7 (Petitioner's Opposition to Respondent's Motion to Strike).

[27] *Id.*

2018) ("An authenticating witness does not testify as to her own knowledge, independent of the documents to be introduced, but testifies only as to the actions taken to acquire the documentary evidence made admissible by her testimony."). The disclosure was sufficient. *Id.* at 1101 ("Because Applicant's initial disclosures, supplemented initial disclosures, and pretrial disclosures are entirely consistent in providing the necessary notice that Applicant would submit documentary evidence of third party use at trial, there has not been any failure to disclose with respect to Ms. Chinda's testimony."). We therefore deny Respondent's motion to strike Ms. Bednarski's testimony declaration.[28]

## C. Petitioner's Evidentiary Objections

Petitioner raises numerous objections to Respondent's evidence, including objections to certain of Respondent's responses to requests for admission, Respondent's witnesses' testimony and accompanying exhibits, and Respondent's redirect examination of its witness, Mr. Keener, following Petitioner's cross-examination.[29] The objections are based on relevancy, hearsay, lack of foundation, and improper re-examination.[30]

None of the testimony and documentary evidence sought to be excluded is outcome determinative, and we decline to exclude it. Because a cancellation proceeding is akin to a bench trial, the Board is capable of assessing the proper

---

[28] Respondent's main witness, Mr. Keener, admitted on cross-examination that AWS SHACK LLC was the lease owner and the entity that operated the restaurant at 208 King Street, not Respondent. Ms. Bednarski's testimony simply corroborates that testimony.

[29] 42 TTABVUE 15-22 (Petitioner's Brief).

[30] *Id.*

evidentiary weight to be accorded the testimony and evidence, taking into account the imperfections surrounding the admissibility of such testimony and evidence. As necessary and appropriate, we will point out any limitations in the evidence or otherwise note that we cannot rely on the evidence in the manner sought. We have considered all of the testimony and evidence introduced into the record. In doing so, we have kept in mind the various objections the parties have raised and we have accorded whatever probative value the subject testimony and evidence merit. *See Luxco, Inc. v. Consejo Regulador del Tequila, A.C.*, 121 USPQ2d 1477, 1479 (TTAB 2017); *U.S. Playing Card Co. v. Harbro, LLC*, 81 USPQ2d 1542, 1540 (TTAB 2006). *Accord Poly-Am., L.P. v. Ill. Tool Works Inc.*, 124 USPQ2d 1508, 1510 (TTAB 2017) (where the objections refer to probative value rather than admissibility and the evidence that is subject to the objections is not outcome determinative, "we choose not to make specific rulings on each and every objection").

We do, however, address Petitioner's objection to the re-examination (redirect) testimony of Respondent's witness, John Keener, following his oral cross-examination by Petitioner. Trademark Rule 2.123(a)(1), 37 C.F.R. § 2.123(a)(1), provides that

> The testimony of witnesses in inter partes cases may be submitted in the form of an affidavit or a declaration pursuant to § 2.20 and in conformance with the Federal Rules of Evidence, filed during the proffering party's testimony period, subject to the right of any adverse party to elect to take and bear the expense of oral cross-examination of that witness as provided under paragraph (c) of this section if such witness is within the jurisdiction of the United States, or conduct cross-examination by written questions as provided in § 2.124 if such witness is outside the jurisdiction of the United States, and the offering party must make that witness available; or taken

by deposition upon oral examination as provided by this section; or by deposition upon written questions as provided by § 2.124.

Pursuant to this Rule, Petitioner elected to orally cross-examine Mr. Keener, whose direct testimony was submitted by Respondent via declaration.[31] At the conclusion of Mr. Keener's cross-examination by Petitioner's counsel, Respondent's counsel conducted a brief re-examination of the witness. Petitioner objects to that redirect testimony, arguing that Trademark Rule 2.123 "permits the cross-examination of a declarant, by an opposing party, but does not permit re-examination of the Declarant by the party that offered the Declaration."[32]

Petitioner's objection to the re-examination portion of Mr. Keener's cross-examination testimony lacks merit. Petitioner cites no precedent, nor are we aware of any, prohibiting redirect examination of a witness following cross-examination, which is standard practice in Board proceedings. *See Moreno v. Pro Boxing Supplies, Inc.*, 124 USPQ2d 1028, 1030 (TTAB 2017) ("The better practice is for the deposing official to state the number of each direct question (or cross question, redirect question, or recross question) before asking the direct question (or cross question, etc.")); *Morgan Creek Prod. Inc. v. Foria Int'l Inc.*, 91 USPQ2d 1134, 1139 (TTAB 2009)

---

[31] 23 TTABVUE (Keener Decl.); 31 TTABVUE (Keener cross).

[32] *Id.* at 21-22. Petitioner also objects to one of the redirect questions posed by Respondent's counsel to the witness on the basis that it was a leading question: "Does AWS Shack, LLC use the mark with the permission and under the control of AWSHUCK, LLC?" 31 TTABVUE 146 (Keener redirect). The question was arguably leading, but it logically flowed from the previous line of questions. "Leading questions should not be used on direct examination except as necessary to develop the witness's testimony." Fed. R. Evid. 611(c). We find it was appropriate in this instance as necessary to develop the witness's testimony during that line of questioning. Furthermore, as noted above, the Board is capable of evaluating the witness's credibility, as well as accord the witness's testimony proper weight.

("The fact that applicant took no redirect after the testimony with respect to dress shirts was elicited on cross examination is a further indication that applicant did not regard the issue of fraud as having been tried."); *Hornby v. TJX Cos.*, 87 USPQ2d 1411, 1417 (TTAB 2008) ("The final group of objections concerns petitioner's redirect testimony, which respondent asserts was outside the scope of cross-examination."); *Genesco Inc. v. Martz*, 66 USPQ2d 1260, 1265 n. 10 (TTAB 2003) ("These five exhibits and the cross and redirect examination elicited in relation thereto are in the record."). *See also Alta Wind I Owner Lessor C v. United States*, 897 F.3d 1365, 1381 (Fed. Cir. 2018) ("Treatises indicate that redirect examination is essential for 'replying to new matter adduced on cross-examination.' … Indeed, redirect '[e]xamination for this purpose is often deemed a matter of right.'") (citation omitted) and MCCORMICK ON EVIDENCE § 32 (8th ed. 2020) (standard practice "to meet new facts or rehabilitate a witness with respect to impeaching matter brought out on cross-examination through the introduction of redirect evidence tending to refute, deny, explain, qualify, disprove, repel, or otherwise shed light on the evidence developed during cross-examination.").

A party's decision to present testimony by affidavit or declaration, as permitted by Trademark Rule 2.123, as opposed to taking testimony by oral deposition, does not result in a penalty that forecloses the opportunity for redirect examination. When promulgating the Board's rules, it was recognized that redirect examination is to be taken at the same time as the oral cross-examination. *Andrusiek v. Cosmic Crusaders LLC*, 2019 USPQ2d 222984, at *3 (TTAB 2019) (citing MISCELLANEOUS CHANGES TO

TRADEMARK TRIAL AND APPEAL BOARD RULES, 81 Fed. Reg. 69,950, 69,964 (Oct. 7, 2016) (Notice of Final Rulemaking) (with respect to cross examination by deposition, "any redirect and recross is to be taken at the same time")).[33] We hold that redirect examination of a testimony declarant is not precluded following cross-examination under Trademark Rule 2.123(a)(1). Petitioner's objection is overruled.

## III. Entitlement to a Statutory Cause of Action[34]

Entitlement to a statutory cause of action is a threshold issue in every inter partes case. *See Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837, at *3 (Fed. Cir. 2020) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 109 USPQ2d 2061, 2067 n.4 (2014)). A party in the position of plaintiff may petition for cancellation of a registered mark where such cancellation is within the zone of interests protected by the statute, 15 U.S.C. § 1064, and the party's reasonable belief in damage is proximately caused by continued registration of the mark. *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d

---

[33] This recognition is further exemplified in Trademark Rule 2.124(d)(1), 37 C.F.R. § 2.124(d)(1), governing the process for cross-examination upon written questions:

> Within ten days from the date of service of the cross questions, the party who proposes to take the deposition, or who earlier offered testimony of the witness by affidavit or declaration, may serve redirect questions on every adverse party. Within ten days from the date of service of the redirect questions, any party who served cross questions may serve recross questions upon the party who proposes to take the deposition or who earlier offered testimony of the witness by affidavit or declaration; any party who serves recross questions shall also serve every other adverse party.

[34] Board decisions have previously analyzed the requirements of Sections 13 and 14 of the Trademark Act, 15 U.S.C. §§ 1063-64, under the rubric of "standing." Despite the change in nomenclature, our prior decisions and those of the Federal Circuit interpreting Section 13 and 14 remain applicable. *See Spanishtown Enters., Inc. v. Transcend Resources, Inc.*, 2020 USPQ2d 11388, at *2 (TTAB 2020).

Cancellation No. 92066957

11277, at *6-7 (Fed. Cir. Oct. 27, 2020).

To establish her entitlement to a statutory cause of action in this proceeding, Petitioner relies on her pending application for the mark AW SHUCKS (Serial No. 87353986) for restaurant and bar services, which she asserts was refused registration because of Respondent's registrations based on likelihood of confusion.[35] Specifically, Petitioner averred in her petition that she "applied to register the mark AW SHUCKS under S.N. 87353986 filed March 1, 2017, for restaurant and bar services," and that "[t]he Trademark Office has refused registration of [Petitioner's] mark on the basis of likelihood of confusion with the marks of Registration Nos. 1510463 and 4524998. [Petitioner] is therefore damaged by Registration Nos. 1510463 and 4524998."[36] However, she did not make of record copies of her prior application or its refusal, so that evidence is not of record *Cf.* Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b). However, these allegations by Petitioner gave Respondent notice of Petitioner's intention to rely on her refused application to establish a statutory entitlement to a cause of action in this proceeding. Respondent, in its answer to the petition, admitted the existence of Petitioner's pleaded application but indicated it was "without sufficient information to admit or deny" the application's refusal based on Petitioner's registrations, and therefore denied that allegation.[37]

At trial, Petitioner testified that she, and prior to her, her late husband, "provided

---

[35] 42 TTABVUE 8 (Petitioner's Brief).

[36] 1 TTABVUE 3 (Petition for Cancellation, ¶¶ 1-2).

[37] 9 TTABVUE 2 (Answer, ¶¶ 1-2).

restaurant and bar services in the Dallas area since 1982 using the trademark AW SHUCKS."[38] Petitioner further testified that she "filed trademark application S.N. 87/353986 AW SHUCKS," which was "refused because of the existence of Registration Nos. 1510463 and 4524998 now owned by [Respondent]."[39] She also testified that she "learned that the AWSHUCKS restaurant in Charleston, South Carolina operated by [Respondent] had closed and that [Respondent] was no longer using the trademark AW SHUCKS," and that the existence of Respondent's registrations was damaging her by preventing her own registration.[40] Respondent did not put in proof to counter this assertion and, in its brief, makes an assertion that assumes the correctness of Petitioner's allegation that Petitioner's application was refused based on Respondent's registrations when it argues that "[t]his refusal, in and of itself, is indicative of the fact that the removal of the periods and apostrophe is not a material alteration of the mark."[41]

We find that Respondent's admission and statements, as well as Petitioner's testimony, establish that Petitioner is the owner of application Serial No. 87353986 and that it was refused registration based on Respondent's registrations. *WeaponX Performance Prods.*, 126 USPQ2d 1034, 1040 (TTAB 2018); *Indus. Adhesive Co. v. Borden, Inc.*, 218 USPQ 945, 948 (TTAB 1983). We further find, based on the

---

[38] 21 TTABVUE 4 (Petitioner Decl., ¶ 4).

[39] *Id.* (¶ 5).

[40] *Id.* at 4-5 (¶¶ 5-6).

[41] 43 TTABVUE 10 (Respondent's Brief). One of Petitioner's arguments is that use claimed by Respondent at the 208 King Street location is a material alteration of the registered mark A.W. SHUCKS and therefore not use of the registered mark.

testimony of Petitioner, that she and her late husband have been continually using the mark AW SHUCKS since 1982, and that Petitioner is a competitor of Respondent.[42] *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014) (Cuban cigar manufacturer entitled to seek cancellation of competitor's trademark registrations); *Honda Motor Co. v. Winkelmann*, 90 USPQ2d 1660, 1662 (TTAB 2009) (competitor entitled to oppose registration).

"Proof of [entitlement to a statutory cause of action] in a Board [cancellation] is a low threshold, intended only to ensure that the plaintiff has a real interest in the matter, and is not a mere intermeddler." *Syngenta Crop Protection Inc. v. Bio-Chek LLC*, 90 USPQ2d 1112, 1117 n.8 (citing *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025-26 (Fed. Cir. 1999)). Under this liberal standard, Petitioner has shown that her interest in cancellation of the registration is squarely within the zone of interests protected by the statute and she has a reasonable belief that damage is proximately caused by continued registration of the mark. Thus, she has established an entitlement to a statutory cause of action.[43]

## IV. Background and Findings of Fact

In June 2015, Respondent purchased the assets of A. W. Shucks, Inc., which owned a restaurant operating under the name A.W. SHUCK'S in Charleston, South

---

[42] 21 TTABVUE 4 (Petitioner Decl., ¶ 4).

[43] Respondent does not challenge Petitioner's entitlement to a statutory cause of action in its brief.

Carolina.[44] After purchasing the restaurant and mark, Respondent continued to operate that restaurant until January 2016.[45] John Keener, Respondent's sole member, testified that Respondent "temporarily ceased" using the mark in order "to convert the restaurant concept associated with A.W. Shuck's from a full service restaurant to what is known as a fast casual concept."[46] Although Respondent continued to operate a full service restaurant at that location, the name of the restaurant was changed to the Oyster House, which continues in operation under that name at that location.[47]

According to Mr. Keener, over the course of 2016, he researched the fast casual restaurant concept to learn how those businesses operate.[48] He engaged two real estate agents "to look for a suitable location for an A.W. Shuck's restaurant in Charleston," but "we did not find a property I deemed to be suitable for the fast casual concept during 2016."[49] Mandy Coleman, a broker for national Restaurant Properties, LLC, was one of the real estate agents he engaged; she testified that Mr. Keener contacted her in 2016 "to assist him in finding a location for an A.W. Shuck's restaurant."[50]

---

[44] 23 TTABVUE 2 (Keener Decl., ¶ 4).

[45] *Id.* at 2-3 (¶ 6).

[46] *Id.* at 3 (¶ 7).

[47] 31 TTABVUE 17-18 (Keener Cross).

[48] 22 TTABVUE 2 (Keener Decl., ¶ 9).

[49] *Id.* (¶10).

[50] 27 TTABVUE 2 (Coleman Decl., ¶¶ 2-3). Petitioner lodged objections to Ms. Coleman's testimony as "clearly hearsay because it recounts an out of court statement made by Mr. Keener and is offered to prove the truth of the proposition that Mr. Keener intended to use A.W. Shuck's as the name of a restaurant in Charleston, SC." Ms. Coleman's statements

Ms. Coleman also testified that she discussed potential restaurant locations with Mr. Keener in 2017.[51] "In particular, we reviewed a closed restaurant known as Chez Fish that was located in … Charleston County." However, that location "was not suitable to Mr. Keener for the proposed A.W. Shucks restaurant."[52]

Mr. Keener testified that in January of 2017, he tried to negotiate a lease for a property located at 306 King Street in Charleston, South Carolina, which had an existing restaurant.[53] However, "the landlord would not extend the lease since the property was for sale and had since been sold."[54]

Mr. Keener further testified that in "the summer of 2017, space became available adjacent to the former A.W. Shuck's location at 66 State Street, Charleston, South Carolina, and next to our existing restaurant known as Oyster House,"[55] the location of the original A.W. Shuck's restaurant.[56] Mr. Keener retained an architect, Elizabeth Allen, to draft plans for that location.[57] Ms. Allen testified that she was retained by Mr. Keener to "prepare plans for a restaurant at 66 State Street in Charleston, South

about what she was told by Mr. Keener are hearsay to the extent Respondent seeks to rely on them for the truth of those statements, and we therefore do not rely on them to establish the truth of his intent. However, her statements are admissible to show that Mr. Keener made those statements to her at the time. Petitioner's objection is overruled on that basis.

[51] *Id*. (¶ 4).

[52] *Id*.

[53] 22 TTABVUE 3 (Keener Decl., ¶ 11).

[54] *Id*.

[55] *Id*. (¶ 12).

[56] 31 TTABVUE 17-18 (Keener Cross).

[57] 23 TTABVUE 4 (Keener Decl., ¶ 13).

Carolina to be known as A.W. Shuck's."[58] She investigated that location on March 6, 2017, "drew initial plans and elevations during the months of April and May 2017[,] and prepared an initial submittal for the City of Charleston's BAR staff review to get initial feedback on the design and alterations necessary … to upfit the real estate" in accordance with the City of Charleston's extensive review requirements for premises in that historic district.[59]

The initial proposal Ms. Allen prepared was submitted to the City of Charleston in August 2017.[60] However, there were problems after the renovations began. According to Mr. Keener, "we began building out the space for A.W. Shuck's on State Street but ran into difficulties with the structure of this very old building. It was determined by our advisors and the City of Charleston that we were not able to put in a kitchen in the State Street location."[61]

Also in 2017, Mr. Keener "worked on menus, equipment plans, and décor for the fast casual concept," and "worked on new logos for A.W. Shuck's," such as the ones shown below for potential signage that he had engaged Jeffrey Fuquay to design:[62]

---

[58] 24 TTABVUE 2 (Allen Decl., ¶ 4). Petitioner objects to Ms. Allen's testimony as inadmissible hearsay for the same reason it objected to Ms. Coleman's testimony. For the same reason discussed in connection with Ms. Coleman's testimony, we overrule Petitioner's objection.

[59] 24 TTABVUE 2-3 (Allen Decl., ¶¶ 5-7).

[60] *Id*. at 3 (¶ 8).

[61] 23 TTABVUE 4 (¶ 14).

[62] *Id*. at 4, 27-33 (¶¶ 15-16, Exhibit E-F); 25 TTABVUE 2, 5-6 (Fuquay Decl., ¶ 55, Exhibits E-F).



Mr. Fuquay, the owner of a graphics design firm, had designed menus for the A.W. Shuck's restaurant since 2013, prior to Respondent's purchase of the restaurant.[63] He testified that during 2016 and 2017, he and Mr. Keener discussed potential menus, logos, and signage "for an A.W. Shuck's restaurant to be located at 66 State Street, Charleston, South Carolina after refurbishment of the location."[64] An excerpt from a menu he designed in 2018, which ended up not being used, is shown below.[65]



---

[63] 26 TTABVUE 2 (Fuquay Decl., ¶¶ 2-3).

[64] *Id.* (¶ 4). Petitioner objects to Mr. Fuquay's testimony as inadmissible hearsay for the same reason she objected to Ms. Coleman's and Ms. Allen's testimony, and for the same reason discussed in connection with Ms. Coleman's testimony, we overrule Petitioner's objection.

[65] 23 TTABVUE 5, 69-70 (Keener Decl., ¶22, Exhibit O); 25 TTABVUE 2-3, 19-20 (Fuquay Decl., ¶ 6, Exhibit O).

During January and into March 2018, Mr. Keener negotiated to purchase another existing restaurant in another area of Charleston County, South Carolina, with the assistance of Mandy Coleman, the restaurant property broker who had been assisting him since 2016.[66] According to Mr. Keener, that location "would have been an A.W. Shuck's fast casual concept restaurant," but he and the owner of that location "could not come to terms."[67] Through his testimony, Respondent introduced the emails they exchanged regarding the due diligence that was performed further to those negotiations.[68]

In March 2018, Mr. Keener resumed construction at the 66 State Street location, which had to be "constructed without a kitchen."[69] He contacted Tait Arthur, a restaurant designer, to help with the restaurant design.[70] Email communications between Mr. Keener and Mr. Arthur pertaining to the restaurant's design, a design of the floor plan, and copies of checks paid to Mr. Arthur for his fees, were introduced through their testimony.[71] An email from Mr. Arthur to Mr. Keener, dated August 3,

---

[66] 23 TTABVUE 4, 23-38 (¶ 17, Exhibit G); 27 TTABVUE 2, 5-8 (Coleman Decl., ¶¶ 4-5, Exhibit G).

[67] 23 TTABVUE 4, 23-38 (¶ 17, Exhibit G). Ms. Coleman also testified that the location was not suitable to Mr. Keener. Although Mr. Keener's statement to her is hearsay, it is relevant and admissible to show that he made the statement to her at the time. 27 TTABVUE 3-4 (Coleman Decl., (¶ 6).

[68] 23 TTABVUE 4, 34-39 (Keener Decl., ¶ 17, Exhibit G); 27 TTABVUE 2, 4-8 (Coleman Decl., ¶ 5, Exhibit G).

[69] 23 TTABVUE 4 (Keener Decl, ¶ 18).

[70] *Id*. at 5, 39-42 (¶ 21, Exhibit H-J); 26 TTABVUE 2 (Arthur Decl., ¶ 4).

[71] 22 TTABVUE 5 (Keener Decl., ¶ 21, Exhibits H-J); 26 TTABVUE 5-11 (Arthur Decl., ¶ 7, Exhibits H-J).

2018, indicates that the attached invoice is "for design fees at AW Shuck Shack."[72] The invoice identifies the subject matter as a "Design fee for office space conversion to AW Shucks Shack."[73]

Also provided through Mr. Keener's testimony were copies of three checks dated within September and November 2018 from Respondent to several contractors (payees R.W. Newman Construction, Simmons Plumbing, and Topside Custom).[74] Also introduced were communications between Mr. Keener and architect Ms. Allen comprised of a photo of a text message dated June 6 and 10 wherein they discuss "moving forward with 66 State Street plan" and review of drawings, and an email from Ms. Allen to Mr. Keener, dated July 16, 2018, providing a copy of a floor plan and front elevation design drafted for the 66 State Street location.[75]

Although the restaurant was constructed without a kitchen, Mr. Keener testified that "[f]ood was prepared by the Oyster house next door," which Mr. Keener had continued to operate at that former A.W. Shuck's restaurant location.[76] According to his testimony, "[t]his location was identified as A.W. Shuck's on the Porch, since a porch or boardwalk separates Oyster House from the A.W. Shuck's on the Porch

---

[72] 22 TTABVUE 40 (Keener Decl., Exhibit H); 26 TTABVUE 9 (Arthur Decl., Exhibit H).

[73] 22 TTABVUE 42 (Keener Decl., Exhibit H); 26 TTABVUE 11 (Arthur Decl., Exhibit H).

[74] 22 TTABVUE 52-54 (Keener Decl., ¶ 21, Exhibit K).

[75] 22 TTABVUE 5, 43-47 (Keener Decl., ¶ 21, Exhibit I). Mr. Keener also introduced through his testimony an email communication between third-party contractors and provided an invoice estimate/proposal, dated September 18, 2018 for sash and door unit designs from a third-party contractor, Millworks, to another third-party contractor, R.W. Newman, which appears to have been forwarded to Mr. Keener. *Id*. at 56-58 (Exhibit L). Because the invoice is not to Mr. Keener or Respondent, we do not consider that evidence for lack of foundation.

[76] *Id*. at 4-5 (¶ 18).

location. A. W. Shuck's on the Porch opened in March of 2019 in the evenings only and for special occasions."[77]

Petitioner disputes that Respondent operates a business at 66 State Street. Nicholas Peterson, Petitioner's son, testified that he went to that location and took photographs.[78] According to his testimony:

> 3. On April 23, 2019, I went to 66 State Street, Charleston, South Carolina. The building at this address is vacant. No restaurant or other business is currently operating at that address.
>
> 4. The photographs attached … to this declaration were taken by me and accurately show the appearance of the exterior of the building … on April 23, 2019.
>
> 5. The photograph at Exhibit C shows the right side of the building…. The sign above the door says AW SHUCKS, but I looked through the windows and door and there was no restaurant furniture or equipment in the interior of the building. In fact, the interior appeared empty.[79]

The photos introduced by Mr. Peterson are shown below:[80]

 

---

[77] *Id.* at 5 (¶ 19).

[78] 21 TTABVUE 7 (Peterson Decl., ¶ 2-3).

[79] *Id.* (¶¶ 3-5).

[80] *Id.* 8-10 (Exhibits A-C).



In response, Mr. Keener testified that "[c]ontrary to the declaration of Nicholas Peterson submitted by Petitioner, this location provides restaurant seating and restaurant and bar service."[81] However, he did not address Mr. Peterson's testimony that there was no restaurant furniture or equipment in the building.

In March of 2019, Mr. Keener learned that "a potential location for an A.W. Shuck's was available at 208 King Street, Charleston, South Carolina."[82] According to Mr. Keener, he took over that location on May 1, 2019, and "the restaurant opened on June 3, 2019 as A.W. Shuck's Seafood Shack."[83] The lease for this location is for twenty years and is in the name of AWS Shack, LLC, a separate entity that is controlled by Mr. Keener, its sole member.[84] AWS Shack, LLC operates that

---

[81] 23 TTABVUE 5 (Keener Decl., ¶ 20).

[82] *Id*. (¶ 23).

[83] *Id*.

[84] 31 TTABVUE 21-22, 37-38 (Keener cross and redirect).

restaurant and uses the mark A.W. SHUCK's with the permission of Respondent.[85]

Through Mr. Keener, Respondent introduced an article from the Charleston Post Courier newspaper, dated July 9, 2019, discussing the opening of A.W. Shucks Seafood Shack;[86] a Facebook page providing online information about the restaurant;[87] photos of the restaurant and signage,[88] and a copy of the restaurant menu,[89] as shown by the following excerpts:





---

[85] Id.

[86] Id. at 6, 87-88 (¶ 27, Exhibit S).

[87] Id. at 5, 83-86 (¶ 26, Exhibit R).

[88] Id. at 5, 72-77 (¶ 24, Exhibit P).

[89] Id. at 5, 78-80 (¶ 25, Exhibit Q).







## V. Abandonment – Applicable Law

Because a registration is presumed valid under the law, 15 U.S.C. § 1057(b), a party seeking its cancellation bears the burden of proving abandonment by a preponderance of the evidence. *See Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 92 USPQ2d 1626, 1628 (Fed. Cir. 2009) (citing *W. Fla. Seafood v. Jet Rests.*, 31 F.3d 1122, 1125, 31 USPQ2d 1660 (Fed. Cir. 1994)).

As relevant here, a mark is deemed abandoned when two elements are proven: (1) use of the mark "has been discontinued," (2) "with intent not to resume such use." Trademark Act Section 45, 15 U.S.C. § 1127. If a plaintiff shows three consecutive years of nonuse, it has established a prima facie showing of abandonment, creating a rebuttable presumption that the registrant has abandoned the mark. *Noble House*

*Home Furnishings*, 118 USPQ2d 1413, 1417 (TTAB 2016) (citing *Imperial Tobacco Ltd. v. Philip Morris Inc.*, 899 F.2d 1575, 14 USPQ2d 1390, 1393 (Fed. Cir. 1990)).

> The burden of production (i.e., going forward) then shifts to the respondent to produce evidence that he has either used the mark or that he has intended to resume use (e.g., a convincing demonstration of 'excusable non-use' that would negate any intent not to resume use of the mark). The burden of persuasion remains with the plaintiff to prove abandonment by a preponderance of the evidence.

*Id.*

### A. Presumption of Abandonment

Petitioner does not dispute that Respondent operated the original A.W. Shuck's restaurant at 66 State Street, Charleston, South Carolina under the mark A.W. SHUCK'S from the time Respondent purchased that restaurant in January 2015 until it ceased operating under that name (and became the Oyster House) at the end of January 2016. Petitioner contends that Respondent did not resume use of the mark after that time.

The issue whether Respondent *ever* resumed use is immaterial for purposes of determining whether to apply the presumption of abandonment, however, because, according to the testimony of Mr. Keener, Respondent did not resume use until either March 2019 (if Mr. Keener's testimony regarding resumed use of the mark at A.W. Shuck's on the Porch on State Street is given credence) or June 3, 2019 (when the 208 King Street A.W. Shuck's Seafood Shack location was opened). Under either scenario, we find that use of the mark did not resume for more than three consecutive years after use was discontinued in January 2016.

Respondent's nonuse for a period of at least three consecutive years thus gives rise to a rebuttable presumption that Respondent abandoned the mark. *Noble House*, 118 USPQ2d at 1417. Respondent admits as much in its brief: "Petitioner's position [that she is entitled to cancellation because Respondent abandoned its mark through nonuse for three years]—which relies on nonuse that only barely satisfied the three-year period required for a presumption of abandonment—lacks merit."[90] Accordingly, the burden of going forward and rebutting this prima facie showing shifts to Respondent. *Id.*

## B. Respondent's Argument That It Intended to Resume Use

"To overcome that prima facie case [of abandonment, Respondent] must come forth with evidence that it 'discontinued' use of [the] mark without an 'intent not to resume' use." *See Imperial Tobacco*, 14 USPQ2d at 1393. In assessing evidence of a registrant's intent to resume use in this context, the registrant's "plans must be to resume commercial use of a mark within the 'reasonably foreseeable future.'" *Executive Coach Builders, Inc. v. SPV Coach Co.*, 123 USPQ2d 1175, 1198-99 (TTAB 2017) (quoting *Hornby v. TJX Cos.*, 87 USPQ2d 1411, 1421-22 (TTAB 2008)).

Subsequent use may be probative of whether the registrant intended to commence use during a previous period of nonuse. *Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 94 USPQ2d 1315, 1317 (Fed. Cir. 2010) (Board may consider evidence and testimony regarding Mattel's practices that occurred before or after the three-year statutory period of nonuse to infer Mattel's intent to resume use during the three-

---

[90] 43 TTABVUE 13 (Respondent's Brief).

year period). Such evidence should temporally and logically link the later use to the prior nonuse, such that an inference can be drawn regarding the intent to resume use during the period of nonuse; otherwise, mere evidence of subsequent use may not suffice to establish that the registrant intended to resume use. *Parfums Nautee Ltd. v. Am. Int'l Indus.*, 22 USPQ2d 1306, 1310 (TTAB 1992).

Respondent argues that "Mr. Keener's testimony conclusively demonstrates that [Respondent] never intended to abandon the A.W. Shuck's mark. Mr. Keener's testimony is supported by several non-party witnesses who worked with him in developing the A.W. Shuck's fast casual dining concept."[91] According to Respondent, the evidence consisting of Mr. Keener's testimony and Respondent's non-party witnesses (Elizabeth Allen, Jeffrey Fuquay, Tait Arthur, and Mandy Coleman)

> establishes, *inter alia,* the efforts made by [Respondent] to locate suitable locations for A.W. Shuck's restaurants, design efforts, and other efforts involving continued use of the A.W. Shuck's mark to identify restaurant services, including use of the mark at an A.W. Shucks restaurant located at 208 King Street, Charleston, South Carolina, which opened on or about June 2, 2019….[92]

> Mr. Keener was continually—beginning as early as 2016—trying to resume use of the A.W. Shuck's mark to identify restaurant services. He took various affirmative steps toward that goal, including spending money to hire third-parties to assist him and actively seeking suitable locations. Unfortunately, numerous factors conspired to delay that process, including difficulties finding an appropriate location and issues with the City of Charleston's Board of Architectural Review, which is very particular about buildings in the Historic District of Charleston. This evidence is more than sufficient to rebut any suggestion that

---

[91] 43 TTABVUE 17 (Respondent's Brief). We note that "intent to abandon" is not the test. Intent not to resume use is the critical element. *See, e.g.*, *Imperial Tobacco*, 14 USPQ2d at 1394.

[92] *Id*. at 11.

[Respondent] did not intend to resume using the mark.[93]

## D. Petitioner's Counter Arguments

We turn first to Petitioner's argument that the use relied on by Respondent at the 208 King Street restaurant cannot benefit Respondent because a different entity uses the mark there and that entity is not a related company. Petitioner argues that

> Although Mr. Keener initially claimed in his Declaration that the [Respondent] was using the mark A.W. Shuck's at the King Street Restaurant, … during his deposition, Mr. Keener admitted that this was not so. Rather, the King Street Restaurant is operated by AWS SHACK, LLC, which owns the lease on the property, and is the entity holding the operating licenses for the restaurant. Although in his Declaration, Mr. Keener states that the King Street Restaurant is operated by Registrant AWSHUCK SC, LLC, at his deposition, he testifies that the King Street Restaurant is owned and operated not by Registrant, but by a different entity, AWS SHACK, LLC, which also owns the lease on the premises. The business licenses displayed at the King Street Restaurant identify AWS SHACK, LLC as the operator of that restaurant….
>
> There is no evidence showing that AWS SHACK, LLC's use of marks at the King Street Restaurant is controlled by the [Respondent]. AWS SHACK, LLC is not a subsidiary of Registrant, because Registrant has no subsidiaries. This alone requires a finding of abandonment and cancellation of the … Registration.[94]

We disagree with Petitioner's characterization of the evidence, since Mr. Keener also testified that he is the sole owner of AWS SHACK, LLC's, just as he is the sole owner of Respondent; that he controls both companies; and that AW SHACK, LLC uses the mark with his permission under Respondent's control.[95] That testimony stands unrebutted.

---

[93] *Id.* at 17.

[94] 42 TTABVUE 34-36 (Petitioner's Brief) (internal citations omitted).

[95] 31 TTABVUE 37-38 (Keener Cross).

As Petitioner notes in her brief,[96] "the term 'related company' means any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used." Section 45 of the Trademark Act, 15 U.S.C. § 1127. "Thus, Section 5 of the Trademark Act permits an applicant or registrant to rely on use of the mark by related companies." *Noble House*, 118 USPQ2d at 1421. "The essence of related company use is the control exercised over the nature and quality of the goods or services on or in connection with which the mark is used. When a mark is used by a related company, use of the mark inures to the benefit of the owner who controls the nature and quality of the goods or services." *Id.*

Based on the facts adduced through Mr. Keener's testimony, AWS SHACK, LLC and Respondent are related companies. Thus, any use of the mark by AWS SHACK, LLC inures to the benefit of Respondent. *See Automedx Inc. Artivent Corp.*, 95 USPQ2d 1976, 1984 (TTAB 2010) ("Dr. Wiesman has been the central figure of what can be characterized as a number of research and development projects that are ultimately marketed by separate entities. ... the mark points to a single source: that is, the use of the SAVe mark was for the benefit of and inured to the benefit of Dr. Wiesman through his conglomerate"); *Airport Canteen Servs., Inc. v. Farmer's Daughter, Inc.*, 184 USPQ 622, 627 (TTAB 1974) ("It is clear from the record that Mr. Guagenti has been the leading light or owner of what can be considered to be family enterprises ... and that, for purpose of convenience, ... transferred ownership of his

---

[96] 42 TTABVUE 35 (Petitioner's Brief).

various interests to one or another of his corporations without disturbing, and that is the important fact, the continuance of operation of his different activities including that of the 'FARMER'S DAUGHTER' restaurant. It is apparent that there was not nor is there any claim of adverse rights in the mark … and that, in essence, any use of the mark by any of the corporations was for the benefit of and inured to the benefit of Mr. Guagenti," who controlled the companies).

Moreover, we can infer that there is an implied license between AWS SHACK, LLC and Respondent. Even if there is no formal agreement, a license can be implied under certain conditions. *See, e.g., Woodstock's Enters. Inc. (Cal.) v. Woodstock's Enters. Inc. (Or.)*, 43 USPQ2d 1440, 1447 (TTAB 1997) ("It is settled, however, that a license can be implied. … [T]he reality of the situation is akin to an informal, implied license from respondent to petitioner to use the registered mark in California.") (*quoted* in *Sock It To Me, Inc. v. Aiping Fan*, 2020 USPQ2d 10611, at * 4 (TTAB 2020)). Here, the conditions arising from Mr. Keener's sole ownership of both companies indicates to us that the companies are related for purposes of Section 5.

Petitioner also argues "[n]one of the evidence shows an intent by [Respondent] to use the Registered Mark A.W. SHUCK'S."[97] More specifically, Petitioner argues that Respondent's intention was to use a mark that is "materially different" from the registered mark, namely, AW SHUCKS (without the periods and an apostrophe).[98] In support, Petitioner makes the following observations about the evidence:

---

[97] 42 TTABVUE 31 (Petitioner's Brief).

[98] *Id.* at 27.

- The mark is not mentioned in the correspondence between Mr. Keener and Ms. Allen, and between Mr. Keener and other parties, regarding Ms. Allen's design plans submitted to the City of Charleston for the State Street location in 2017, or on the plans themselves.[99]

- The mark is "referred to as AW SHUCKS no periods and no apostrophe" in the proposed design logos prepared by Mr. Fuquay in 2017.[100] [Contrarily, one of the two proposed designs includes an apostrophe in the form of a shrimp].

- The mark is referred to as "Aw Shucks" in the menu design prepared by Mr. Fuquay in 2017.[101] [It is also referred to as "Aw Shucks Seafood Shack" and "AWSSS" in the menu].

- The mark is not mentioned in the email correspondence between Mr. Keener and Ms. Coleman regarding the negotiations to purchase an existing restaurant in Charleston County in January 2018;[102]

- The restaurant is referred to as "AW Shuck Shack" in a first exchange of emails pertaining to Tait Arthur's 2018 invoice proposal and interior floor plan design for the 66 State Street location, and the design is referred to as "AWS plans" in a second exchange of emails a copy of the draft floor plan design.[103] [Contrarily, the invoice from Mr. Arthur refers to "AW Shucks Shack" with an "s" in Shucks].

- The mark is not mentioned in the correspondence and text messages between Mr. Keener and Ms. Allen regarding the architectural designs she drafted for the State Street location, or the plans themselves.[104]

- The subject line of the email from a subcontractor (Millworks) providing an estimate to a contractor (R. W. Newman) identifies "AW SHUCKS."[105]

- Photos of the State Street restaurant construction include "various decorative prints on the walls, one of which include the words A.W.

---

[99] *Id*. at 27-28, citing 23 TTABVUE 8-26, Keener Decl., Exhibits C and D.

[100] *Id*. at 28 (citing 23 TTABVUE 27-29, Keener Decl., Exhibit E).

[101] *Id*. (citing 23 TTABVUE 27-29, Keener Decl., Exhibit E).

[102] *Id*. (citing 23 TTABVUE 34-38, Keener Decl., Exhibit G).

[103] *Id*. (citing 23 TTABVUE 39-42, 48-51, Keener Decl., Exhibits H, J).

[104] *Id*. (citing 23 TTABVUE 43-47, Keener Decl., Exhibit I).

[105] *Id*. (citing 23 TTABVUE 55-58, Keener Decl., Exhibit l).

SHUCK'S OYSTER BAR ... and another A.W. SHUCKS ON THE PORCH":[106] [The first photo of the framed picture shown below does not show the wording "OYSTER BAR." The second image, an excerpt of the photo provided by Mr. Keener, appears to be the same sign that could not be fully seen in the photo taken by Nicholas Peterson on April 23, 2019, which he said showed the name AW SHUCKS.[107]]





- The menu created for Respondent in 2018 for the 66 State Street location shows the mark AW SHUCKS SEAFOOD SHACK.[108] [Contrarily, the menu

---

[106] *Id.* (citing 23 TTABVUE 65, 68 Keener Decl., Exhibit N).

[107] See note 72 and the corresponding photo on page 23 above.

[108] 42 TTABVUE 28 (Petitioner's Brief, citing 23 TTABVUE 69-70, Keener Decl., Exhibit O).

shows the mark with an apostrophe in the form of a shrimp as shown below:][109]



- Photos of the 208 King Street restaurant, on the window, and on clothing, show the name and mark used at the restaurant as AW SHUCKS SEAFOOD SHACK or AW SHUCKS with no periods and no apostrophe.[110] [Contrarily, the photos show use with an apostrophe in the form of a shrimp:][111].



---

[109] 23 TTABVUE 70 (Keener Decl., Exhibit O).

[110] 42 TTABVUE 28-29 (Petitioner's Brief, citing 23 TTABVUE 71-77, Keener Decl., Exhibit P).

[111] 23 TTABVUE 71-77 (Keener Decl., Exhibit P).

- The menu for the 208 King Street restaurant shows the mark AW SHUCKS with no periods and no apostrophe.[112] [Contrarily, the menu for this location shows the mark with an apostrophe in the form of a shrimp:][113]



- The webpage providing online information for the 208 King Street restaurant uses both A.W. SHUCK'S and AW SHUCKS SEAFOOD SHACK.[114] [Contrarily, periods and an apostrophe are used in all wording for the mark except in the domain name, including the following excerpts from the webpage:][115]

1.  A.W. Shuck's Seafood Shack - Home | Facebook



2.  A.W. Shuck's
    Seafood Shack

---

[112] 42 TTABVUE 29 (Petitioner's Brief, citing 23 TTABVUE 78-80, Keener Decl., Exhibit Q).

[113] 23 TTABVUE 78-80, Keener Decl., Exhibit Q).

[114] 42 TTABVUE 29 (Petitioner's Brief, 23 TTABVUE 81-86, Keener Decl., Exhibit R).

[115] 23 TTABVUE 81-86 (Keener Decl., Exhibit R).

3. **About**  Se

208 King Street
Charleston, South Carolina 29401

Contact A.W. Shuck's Seafood Shack on Messenger

4. **See more of A.W. Shuck's Seafood Shack on Facebook**

A.W. Shuck's Seafood Shack
Like This Page · June 26 ·

5. It's a gorgeous day on King Street! Do a little shoppir and join us for lunch on the patio!

- The newspaper review provided by Respondent identifies the restaurant at 208 King Street as A.W. SHUCKS.[116] [The article also identifies the first A.W. Shuck's that "opened more than 40 years ago on Market Street" as AW SHUCKS, but it was actually A.W. SHUCK'S:][117]

## Longtime downtown restaurant closes, to reopen under new concept

Warren L. Wise   Jan 3, 2016



Notwithstanding Petitioner's contentions, the evidence shows that during the

---

[116] *Id*. (citing 23 TTABVUE 87-88, Keener Decl., Exhibit S).

[117] 20 TTABVUE 18 (Petitioner's Notice of Reliance, Exhibit C).

years 2016 through 2019, Mr. Keener considered use of the mark in various formats including with and without the periods and apostrophes, and combinations thereof. That the name of the restaurant was most often referred to in correspondence without periods or without an apostrophe during Respondent's planning stages does not persuade us that Respondent did not intend to publicly use the mark as registered (with the periods and apostrophe). People often dispense with periods and apostrophes when writing, particularly in informal emails and text messages. Just as common, if not more so, are typographical errors. Nor do we find compelling Respondent's failure to identify the mark in correspondence with real estate agents, architects, contractors, and the like, which is unnecessary for their purposes further to a business relationship that had already begun.

Respondent's witness, Mandy Coleman, who worked with Mr. Keener from 2016-2018 to find a suitable restaurant location, testified that Mr. Keener originally contacted her to assist him in finding a location for an "A.W. Shuck's" restaurant.[118] Her mention in the same declaration that it was her understanding that the proposed locations they had communicated about were for a restaurant that was to be branded as an "A.W. Shucks" restaurant (without the apostrophe) is inconsequential in view of various other pieces of evidence where Respondent had proposed use and later did use the mark with an apostrophe on menus and signage encountered by the relevant consumers.

Respondent's witness Jeffrey Fuquay testified that he and Mr. Keener discussed

---

[118] 27 TTABVUE 2 (Coleman Decl., ¶ 2).

potential menu and logo designs for an "A.W. Shuck's" (with periods and an apostrophe) restaurant in 2016, discussed the menu and advertising for an "A.W. Shucks" (without an apostrophe) restaurant in 2017, and he developed a menu, signage and advertising for an "A.W. Shuck's" (with periods and an apostrophe) restaurant in 2018.[119] That one of his mentions of the term did not use an apostrophe is also insignificant in view of the other evidence of record showing proposed and actual use with an apostrophe. The early designs he proposed (two logo designs, and one menu) included one design with an apostrophe, and the designs he prepared thereafter for the menu and signage now used at the 208 King Street location, as well as on the restaurant's Facebook page, all have an apostrophe.[120] Thus, the alternate designs he prepared along the way are more indicative of Mr. Keener's exploration of the mark in various forms than evidence of a lack of intent to use the mark as registered.

While the evidence presented by Respondent supports its contention that it maintained an intention to use the mark with the apostrophe, the evidence is slim as to Respondent's intention to use the mark with periods in addition to the apostrophe. Reference to that exact term "A.W. Shuck's" is mentioned only sporadically in the testimony, but not in the evidence regarding the preparations for use, or the use itself once the 208 King Street location was opened. We therefore are unable to find that Respondent intended to continue using the mark in the exact form shown in the

---

[119] 25 TTABVUE 2 (Fuquay Decl., ¶ 4-6).

[120] *Id.* at 2-10 21-29 (Exhibits E, F, P, Q).

registration. *See In re USA Warriors Ice Hockey Program, Inc.*, 122 USPQ2d 1790, 1794 (TTAB 2017) ("[W]hen it is within a party's power to produce a certain kind of persuasive testimony or documentary evidence on an urged factual finding, and it fails to do so, a tribunal is at least permitted—perhaps even compelled—to draw the inference that that fact is unsupported and/or untrue.").

This brings us to the question of whether Respondent's intention to resume use of the mark as "AW Shuck's" (without the periods), and subsequent use in that form at the 208 King Street location, constitutes a continued intention to use the registered mark "A.W. Shuck's" (with the periods). According to Petitioner,

> The Registered Mark A.W. SHUCK'S and the mark AW SHUCKS now used at the King Street Restaurant do not create 'the same, continuing commercial impression.' The registered mark clearly tells customers that the restaurant is owned/operated by a person named Shuck whose initials are A.W. This is why the registration of the mark includes the note 'The name "A.W. Shuck's" does not identify a living individual.' This meaning of the mark is confirmed by the mark of Registration No. 1510463 [design omitted] which consists of the words A.W. SHUCK'S together with a silhouette of a man, presumably Mr. A.W. Shuck. Mr. Peterson owned Registration No. 1281031 AW SHUCKS. No such statement was included in that registration, nor has the Trademark Office Examiner required such a statement in Ms. Peterson's application 87/353986 AW SHUCKS. This is because without the periods and the apostrophe, all reference to an individual is lost and replaced by the exclamation AW SHUCKS, merely an expression without any implication of a person.[121]

In response, Respondent argues that

> To the contrary, any changes in the mark were extremely minor and cosmetic. … The mark used at King Street contained the same letters and spacing; the only difference was the removal of two periods and an apostrophe. This difference is not sufficient to change the overall commercial impression of the marks to a consumer of restaurant

---

[121] 42 TTABVUE 32-33 (Petitioner's Brief) (internal citations omitted).

services. …

Petitioner's arguments are premised on the idea that [the] AW Shucks mark Registrant is using at the King Street location conveys an exclamation ("Aw, shucks!"), while the mark in its identical form in the Registration suggests ownership by a person named A.W. Shuck. However, she presents no evidence supporting her interpretation of the marks and cites no legal authority supporting her contention that the insertion of two periods and an apostrophe so radically alters the mark as to evidence an intention to abandon. Additionally, the dictionary definition of the adjective form of "AW SHUCKS" cited by Petitioner in her brief is actually also punctuated differently from that being used at the King Street location. Specifically, the Merriam-Webster definition includes a hyphen, which is absent from the mark used to identify the King Street location. Simply put, the evidence does not support that Registrant so materially altered the commercial impression of the mark such that abandonment occurred. Petitioner's own witness observed that the mark "A.W. Shuck's" (with the periods and apostrophe) were used at the King Street location.[122]

As we noted previously, and contrary to Petitioner's contention, the evidence supports Respondent's claim to having a continued intention to resume use of the mark with the apostrophe (in the form of a shrimp design). Respondent, in its brief, also seems to overlook that evidence, which was provided by its own witnesses. Accordingly, we limit our comparison to the marks "A.W. Shuck's" and "AW Shuck's."

Petitioner and Respondent both cite to *Paris Glove of Canada Ltd. v. SBC/Sporto Corp.*, 84 USPQ2d 1856 (TTAB 2007), which identifies the applicable standard for evaluating whether a change to a registered mark is permissible:

"Material alteration" is the standard for evaluating whether a change in the form of a registered mark is permissible. *See* Trademark Rules 2.72 and 2.73, 37 C.F.R. §§ 2.72 and 2.73. A material alteration exists if the old and new formats do not create the same general commercial impression. In contrast, a change in the form of a mark does not constitute abandonment or a break in continuous use if the change

---

[122] 43 TTABVUE 20-21 (Respondent's Brief) (internal citations omitted).

> neither creates a new mark nor changes the commercial impression of the old mark. Marks entirely comprised of words can sometimes be varied as to their style of lettering, size and other elements of form without resulting in a material alteration of the mark.

*Id.* at 1861 (some internal citations omitted). If the modified version of the mark "creates the same continuing commercial impression as the registered mark," its use does not constitute abandonment. *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 116 USPQ2d 1129, 1134 (Fed. Cir. 2015).[123]

"Punctuation, such as quotation marks, hyphens, periods, commas, and exclamation marks, generally does not significantly alter the commercial impression of the mark." TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 807.14(c) (Oct. 2018). *Cf. In re Litehouse Inc.*, 82 USPQ2d 1471 (TTAB 2007) (punctuation marks in the mark CAESAR!CAESAR! do not significantly change commercial impression of the mark and do not suffice to cure mere descriptiveness of the mark for salad dressing). Here, "A.W. Shuck's" is an obvious play on the informal term "aw-shucks," which means "being or marked by an unsophisticated, self-conscious, or self-effacing manner // [e.g.,] an aw-shucks grin."[124] It is written in the format of a person's

---

[123] Petitioner also cites *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 17 USPQ2d 1866, 1868 (Fed. Cir. 1991) and *Compania Insular Tabaclera, S.A. v. Camacho Cigars, Inc.*, 167 USPQ 299 (TTAB 1970) for the proposition that the standard for comparison is that marks must be "legal equivalents." These cases are inapposite because they relate to tacking, which is not the issue here. In any event, "[i]n both contexts—priority and abandonment—the fundamental inquiry is the same: has the original mark been so substantially altered such that third parties would not expect that presently used mark to be used under and protected by the registration." *Jack Wolfskin*, 116 USPQ2d at 1133. "The same legal standard applies in both contexts." *Id*.

[124] (https://www.ahdictionary.com/word/search.html?q=aw-shucks, accessed on November 12, 2020). Petitioner cited this definition but did not properly make it of record. Nevertheless, we

initials (A.W.) and surname (Shuck's) in the possessive form while at the same time calling to mind the playful meaning the term would have without that punctuation.

We find that the omission of periods in this case does not result in a material alteration to the mark because "AW Shuck's and "A.W. Shuck's" have the same continuing commercial impression. Consumers who understand the meaning of the term "aw-shucks," will likely see either manner of use as both an expression of that meaning and as a person's name, fictional or not. Consumers who do not know the meaning of the term, perhaps a younger generation of consumers, will view either term as a person's name. Initials are often displayed without periods. Consequently, we find that Respondent intended to use a mark that is not materially different from the registered mark. *Jack Wolfskin*, 116 USPQ2d at 1133.

Petitioner argues that "[t]he decorative prints on the walls of the King Street Restaurant are ornamental and customers would not perceive the words in the prints as a trademark indicating the source of the services" and therefore does not show a bona fide use of the mark in the ordinary trade.[125] Although it is not clear which prints Petitioner refers, the evidence of record, including the testimony and documentary evidence, shows use of the mark at the King Street location on window signs, and on menus (as well as on an employee's shirt[126]). *See* TMEP § 1301.04(a)

---

exercise our discretion to take judicial notice of it. The Board may take judicial notice of dictionary definitions from online sources when the definitions themselves are derived from dictionaries that exist in printed form or have regular fixed editions. *See In re White Jasmine LLC*, 106 USPQ2d 1385, 1392 n.23 (TTAB 2013); *In re Red Bull GmbH*, 78 USPQ2d 1375, 1378 (TTAB 2006).

[125] 42 TTABVUE 36-37 (Petitioner's Brief).

[126] 23 TTABVUE 73 (Keener Decl., Exhibit P).

(Acceptable specimens of use for restaurant services may include menus). The issue in this case is not whether Respondent made use of its mark at the King Street restaurant, but rather whether—in view of the presumption of abandonment arisen due to more than three years of consecutive nonuse—Respondent has produced "evidence that [it] has intended to resume use (e.g., a convincing demonstration of 'excusable non-use' that would negate any intent not to resume use of the mark")," *Noble House*, 118 USPQ2d at 1417, which we find Respondent has demonstrated.[127]

## VI. Conclusion

In conclusion, we find that Respondent has overcome the presumption of abandonment that arose due to Respondent's nonuse of the mark A.W. SHUCK'S for more than three consecutive years. Considered in its totality, the evidence in this case, including Respondent's efforts to find a new location for the restaurant (using a "fast casual restaurant concept") between 2016 and 2019 following discontinuation of use at the original location; Respondent's plans, designs, and construction at a proposed new location at 66 State Street between 2017 and 2018; preparation of proposed new logo and menu designs between 2017 and 2018, including designs that were eventually used; and the opening of the 208 King Street location on June 3, 2019; demonstrates that Respondent maintained an intent to resume use of the mark

---

[127] Petitioner also argues that Respondent has not shown commercial use of the mark at the 66 State Street location for its "A.W. Shuck's On The Porch" restaurant. *Id*. at 38-39. We agree that use has not been demonstrated for that location. However, we find that the evidence of Respondent's efforts to put the mark in use at that location is probative in terms of Respondent's overall efforts showing that it maintained an intent to resume use of the mark in commerce.

throughout the period of nonuse. *Imperial Tobacco,* 14 USPQ2d 1581. Petitioner has failed to prove abandonment of the mark in Registration No. 4524998.

**Decision**: The petition to cancel is granted as to subject Registration No. 1510463 for the mark , but denied as to subject Registration No. 4524998 for the mark A.W. SHUCK'S in standard characters.